**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff–Counterdefendant,**

v.

**The L.E. MYERS CO. GROUP, The L.E. Myers Co. and Lemco Engineers, Inc., Defendants–Counterplaintiffs.**

**The L.E. MYERS CO. GROUP, The L.E. Myers Co. and Lemco Engineers, Inc., Third–Party Plaintiffs,**

v.

**The EMAR COMPANY, American Risk Management, Inc. and The Walsh Group, Third–Party Defendants.**

84 Civ. 7481 (SWK).

United States District Court,
S.D. New York.

Sept. 5, 1996.

---

See also, 928 F.Supp. 392.

Lester Schwab Katz & Dwyer by Kenneth R. Maguire, Fern Flomenhaft, New York City, for Plaintiff–Counterdefendant.

Bell, Boyd & Lloyd by John P. Scotellaro, David D. Cleary, Chicago, IL, Cleary, Gottlieb, Steen & Hamilton by Evan A. Davis, Barry D. Ford, New York City, for Defendants–Counterplaintiffs and Third–Party Plaintiffs.

Landman Corsi Ballaine & Ford by Stephen Jacobs, Cathleen Giannetta, New York City, for Third–Party Defendant American Risk Management, Inc.

James S. Rowen & Associates by James S. Rowen, New York City, for Third–Party Defendant The Emar Company.

Wilson, Elser, Moskowitz, Edelman & Dicker by Ramon D. Held, New York City, for Third–Party Defendant The Walsh Group.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

On June 19, 1996 this Court granted the cross-motion of National Union Fire Insurance Company of Pittsburgh, PA ("National Union") for a jury trial. Trial having been set for September 24, 1996, the parties have filed various motions *in limine*. Specifically, National Union moves to (1) disqualify counsel of defendants The L.E. Myers Group, The L.E. Myers Co. and Lemco Engineers, Inc. (collectively "Myers"); and (2) exclude any reference to the Frank B. Hall proposal as a "quotation." Myers moves to (1) exclude any evidence that certain brokers referred to the architects and engineers errors and omissions coverage as "incidental"; (2) dismiss National Union's claim for negligent misrepresentation; (3) exclude evidence pertaining to damages determined by the Kentucky Courts; and (4) exclude evidence inconsistent with the Court's October 1995 Opinion. Third-party defendant American Risk Management, Inc. ("American Risk") moves to (1) exclude evidence in support of National Union's argument that the Umbrella Policy rather than the Binder controls; (2) exclude evidence pertaining to National Union's claims against it; (3) exclude evidence regarding the brokers' notifying National Union of the loss; (4) exclude evidence of the brokers' insurance; and (5) exclude any extrinsic evidence as to the meaning of the various policy provisions. Finally, third-party defendant The Emar Company ("Emar") moves to (1) exclude evidence pertaining to the Umbrella Policy; (2) exclude evidence pertaining to the alleged knowledge, acceptance and ratification of the Umbrella Policy; and (3) exclude evidence pertaining to the alleged nondisclosure of material facts relating to the substantial architects and engineers business of Myers.

## DISCUSSION [1]

### I. National Union's Motions

#### A. Motion to Disqualify Counsel

National Union moves to disqualify Myers' counsel, John Scotellaro ("Scotellaro") as well as his firm, Bell, Boyd and Lloyd, on the ground that both National Union and Myers list Scotellaro in the parties' Joint Pre–Trial Order as a potential witness at trial. Since there is no suggestion that, at the time Scotellaro and Bell, Boyd & Lloyd began representation of Myers in September 1984, there was any reason to believe that Scotellaro "ought to be called as a witness," Disciplinary Rule 5–102(A) of the New York Code of Professional Conduct, rather than Rule 5–101(B), is the correct starting point. Rule 5–102(A) provides, in pertinent part, that

[i]f, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer

---

1. The facts and procedural history of this case are set forth in detail in the Court's Memorandum Opinion and Order dated October 3, 1995 (the "October 1995 Opinion"), familiarity with which is presumed. *See National Union Fire Ins. Co. of Pittsburgh, PA. v. L.E. Myers Co. Group,* No. 84 Civ. 7481, 1995 WL 581692 (S.D.N.Y. Oct. 3, 1995).

ought to be called as a witness on behalf of the client, the lawyer shall withdraw as an advocate before the tribunal, except that the lawyer may continue as an advocate and may testify in the circumstances enumerated in [DR 5–101(B)(1) through (4) ]. N.Y.Comp.Codes R. & Regs. tit. 22, § 1200.21(a). Several exceptions to this rule are found in Disciplinary Rule 5–101(B), which allows a lawyer to testify: (1) If the testimony will relate solely to an uncontested issue; (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the lawyer's firm to the client; or (4) As to any matter, if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case. N.Y.Comp.Codes R. & Regs. tit. 22, § 1200.20(b).

 Attorney disqualification and vicarious disqualification of an attorney's law firm are decisions subject to the discretion of the court. *Kubin v. Miller,* 801 F.Supp. 1101, 1113 (S.D.N.Y.1992). A court must be wary of disqualification motions imposed solely for tactical purposes. *Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir.1989); *Bennett Silvershein Assocs. v. Furman,* 776 F.Supp. 800, 802 (S.D.N.Y.1991). Further, the Court is mindful that the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel. *Government of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir.1978); *see also Bennett Silvershein Assocs. v. Furman,* 776 F.Supp. at 802 ("the party seeking disqualification must carry a 'heavy burden,' and must meet a 'high standard of proof' before a lawyer is disqualified" (citations omitted)). This is so because of the delay and additional expense created by substitution of counsel, the potential for abuse inherent in such motions, as well as the disfavor with which the courts view denying a party his counsel of choice. *See generally Armstrong v. McAlpin,* 625 F.2d 433, 444 (2d Cir.1980) (adopting a restrained approach to disqualification), *vacated on other grounds,*

449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). Thus, motions to disqualify counsel are generally disfavored and subject to fairly strict scrutiny. *Lamborn v. Dittmer,* 873 F.2d at 531; *Bennett Silvershein Assocs. v. Furman,* 776 F.Supp. at 802.

In the parties' Joint Pre–Trial Order submitted to the Court on April 17, 1996, both Myers and National Union list Scotellaro as a potential witness. Myers states:

> Mr. Scotellaro will testify about the OMU litigation, the exhaustion of the Republic Insurance Company limit of liability, attorneys' fees and costs incurred and paid by Myers in this litigation and the OMU litigation, and Myers' damages.

Joint Pre–Trial Order, dated April 17, 1996, at 70. National Union includes Scotellaro as a witness as follows:

> Mr. Scotellaro will be called to testify regarding damages: alleged defense costs in the underlying and coverage actions.

*Id.* at 67.

The Court finds that the present circumstances do not warrant disqualification. Testimony with respect to attorneys' fees fall squarely within the third exception of Rule 5–101(B). In addition, the Court finds that any testimony relating to the Owensboro Municipal Utilities ("OMU") litigation will be corroborative of other testimony and, in any event, will likely relate "solely to an uncontested issue." DR 5–101(B)(1). National Union is bound by the findings in the OMU litigation and cannot contest settled issues here. Finally, the Court finds that the proposed testimony relating to the exhaustion of Republic Insurance Company's ("Republic") limit of liability is largely cumulative, and National Union has failed to show that the narrow scope of Scotellaro's testimony will be disputed.

In addition, the Court finds that disqualification at this late point would work a substantial hardship on Myers for several reasons. Scotellaro and Bell, Boyd & Lloyd have represented Myers since the commencement of this action nearly twelve years ago, as well as through the entirety of the OMU action. National Union's argument

that local counsel Cleary, Gottlieb, Steen & Hamilton can adequately represent Myers with a trial scheduled approximately one month away is not persuasive. Scotellaro and Bell, Boyd & Lloyd have been lead counsel throughout the action, and have handled almost all substantive matters. Although not determinative, it is appropriate to consider the financial hardship that would result should counsel be disqualified. *See Clark v. Bank of New York*, 801 F.Supp. 1182, 1196–97 (S.D.N.Y.1992) ("The Second Circuit has 'indeed been loathe [sic] to separate a client from his chosen attorney. . . . The delay and additional expense created by substitution of counsel is a factor to which [it has] attached considerable significance. . . .' " (quoting *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979))).

■ National Union also argues that Scotellaro and Bell, Boyd & Lloyd should be disqualified under DR 5–102(B). This Rule states:

> If after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw from acting as an advocate before the tribunal.

N.Y.Comp.Codes R. & Regs. tit. 22, § 1200.21(b). In order to disqualify an attorney on the basis of the advocate-witness rule, a party must demonstrate that the testimony is both necessary and substantially likely to be prejudicial. *Paramount Communications, Inc. v. Donaghy*, 858 F.Supp. 391, 394 (S.D.N.Y.1994); *Parke–Hayden, Inc. v. Loews Theatre Management*, 794 F.Supp. 525, 527 (S.D.N.Y.1992). National Union fails, however, to indicate how Scotellaro's testimony is necessary or describe in what way prejudice to Myers could occur. Scotellaro's testimony is largely cumulative, and no source of prejudice to Myers has been offered by National Union, or is likely. Thus,

National Union's effort to disqualify Scotellaro and Bell, Boyd & Lloyd on the eve of trial is denied.

**B. Reference to the Frank B. Hall Proposal as a "Quotation"**

■ National Union next moves, pursuant to Federal Rule of Evidence 403, to exclude any reference to the proposal given to Myers by Frank B. Hall as the "Frank B. Hall Quotation" or "quotation," on the grounds that such reference would confuse the jury and unfairly prejudice National Union.

The Court determined in its October 1995 Opinion that a triable issue of fact existed as to the referent of the term "quotation" in the insurance binder issued by National Union on October 7, 1983 (the "Binder"). The Court held that "while there is evidence that the Risk Management Document may well be the source of the quotation referred to in the Binder, the precise meaning of the term 'quotation' is unclear absent the trier of fact's evaluation of further evidence." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group*, No. 84 Civ. 7481, 1995 WL 581692, at *10 (S.D.N.Y. Oct. 3, 1995).

Myers and the brokers are entitled to offer evidence to establish that the Risk Management Document is the "quotation" to which the Binder refers. The Court finds that characterization of the Risk Management Document as the "quotation" would not unfairly prejudice National Union. Disallowance of any such association would eviscerate Myers' and the brokers' case, as well as confuse the issues. Although such an association may well be damaging to National Union, it will not result in "unfair prejudice" to National Union within the meaning of Federal Rule of Evidence 403. *Cf. Peters v. MCI Telecommunications Corp.*, No. 87 Civ. 8335, 1989 WL 67220, at *3 (S.D.N.Y. June 14, 1989) (" 'prejudice,' as used in Rule 403 [refers to] 'unfair prejudice' rather than 'harmful' evidence").[2]

---

**2.** The Court has considered National Union's remaining arguments, including the suggestion

that the Court bifurcate the issues of liability and damages, and finds them to be without merit.

## II. Myers' and Emar's Motions

### A. Reference to the Insured Risk as "Incidental"

■ Myers first moves to exclude any evidence that certain brokers referred to the architects and engineers errors and omissions coverage as "incidental." Myers argues that since National Union has never alleged a defense of fraud or misrepresentation, evidence of a description of the risk as "incidental" would be irrelevant and must be excluded under Federal Rule of Evidence 402.

National Union counters that evidence of reference to the insured risk as "incidental" is relevant to the issues of (1) the meaning of the term "quotation" in the Binder; (2) the content and scope of the original quotation; (3) the change in the "quotation" subsequent to issuance of the Binder; and (4) the parties' understanding that, notwithstanding the reference in the Binder to the "quotation," the terms of that "quotation" changed subsequent to the issuance of the Binder and prior to the issuance and acceptance of the December 20, 1983 umbrella liability insurance policy (the "Umbrella Policy").

As discussed above, the Court held in its October 1995 Opinion that the trier of fact should determine the precise meaning of the term "quotation" referred to in the Binder. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group,* No. 84 Civ. 7481, 1995 WL 581692, at *10 (S.D.N.Y. Oct. 3, 1995). Thus, National Union is entitled to proffer evidence to establish that the insured risk was "incidental" in order to establish the identity, content and scope of the quotation. National Union is excluded, however, from offering evidence that the risk was "incidental" in order to show fraud on the part of the brokers.

### B. Negligent Misrepresentation

■ Myers also claims that any evidence relating to the brokers' alleged negligent misrepresentation in the procurement of the architects and engineers errors and omissions coverage or to the coverage as "incidental" is irrelevant, and must be excluded. Although the Court did not expressly dismiss National Union's first three claims against the brokers in its April 9, 1996 Order, Myers argues that (1) the arguments made by the Court in dismissing claims for contribution and indemnity apply equally to misrepresentation; and (2) National Union's misrepresentation claims are no more than disguised claims for contribution and indemnity. In addition, Emar and American Risk each maintain that, as a result of the Court's April 9, 1996 Order, they stand in no special relation to National Union which would give rise to an action for negligent nondisclosure.[3]

National Union's first three claims state in common language:

#### FIRST CLAIM FOR RELIEF

[I]f this Court should declare that National Union is obligated under its contract of insurance with the defendants to defend or indemnify defendants in relation to claims asserted by Owensboro Municipal Utilities against Lemco, then [the broker] is liable to National Union for any damages that National Union may sustain by reason of such judgment.

#### SECOND CLAIM FOR RELIEF

[I]f the defendants obtain a judgment against National Union, [the broker] is liable to National Union for any damages that National Union may sustain by reason of such judgment.

#### THIRD CLAIM FOR RELIEF

[I]f defendants obtain a judgment declaring that National Union is obligated to defend or indemnify defendants in relation to any claims asserted by Owensboro Municipal Utilities against Lemco, [the broker] is liable for the difference in the self-insured retention between the underlying policy in effect on the inception date of the insurance policy and that for the underly-

---

3. Emar contends that if no special relationship exists between National Union and American Risk, the only broker which directly communi-cated with National Union, *a fortiori* no such relationship exists between National Union and Emar.

ing policy subsequently substituted therefor.

National Union's Second Amended Answer to Cross–Claim and Cross–Claims Against Emar, American Risk and The Walsh Group, dated Dec. 6, 1995, annexed to the affidavit of John P. Scotellaro, as Exh. "6." The Court, in its April 1995 Order, dismissed a fourth claim based on National Union's failure to (1) show that its contribution claim sounded in tort; and (2) establish the "special relationship" necessary to support a claim for "implied contract" indemnification. Myers argues that National Union's first three claims against the brokers, although not specifically addressed in the April 9, 1995 Order, are susceptible to the same analysis the Court applied to the fourth claim.

■ The purpose of an *in limine* motion is " 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.' " *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir.1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.,* 652 F.Supp. 1400, 1401 (D.Md. 1987)). The Court notes that at present, it does not have sufficient information regarding National Union's relationship to the brokers to allow it to rule *in limine* as to these matters. At this time it appears that substantial issues of fact exist regarding whether (1) the brokers owe a duty to National Union; and (2) the negligent misrepresentation claims are, in essence, no more than claims for contribution and/or indemnification. Thus, Myers' and Emar's motions are denied at this time with leave to reinstate at trial.

In the alternative to finding that none of National Union's claims for relief against the brokers apply to it, American Risk argues that no evidence regarding the fourth claim should be allowed. Since the Court's April 9, 1996 Order expressly granted American Risk's motion to dismiss National Union's fourth claim for relief, American Risk's motion to exclude evidence offered in support of that claim is granted.

## C. Evidence Regarding Determinations of the Kentucky Court

■ Myers next argues that evidence regarding damages determined by the Kentucky Courts should be excluded. Specifically, Myers argues that National Union intends to relitigate issues that were determined in the underlying action brought by OMU against Myers in the Kentucky Circuit Court and the Kentucky Court of Appeals. Myers claims that since National Union refused to defend its insured in the underlying action, it assumed the risk of what was ultimately proven against the insured, and is collaterally estopped from relitigating settled issues. Thus, according to Myers, the determination by the Court of Appeals of the Commonwealth of Kentucky that Myers was entitled to a credit of $1,006,484 for money expended on repairs is not subject to relitigation. Furthermore, Myers argues that this determination is unaffected by the subsequent settlement between OMU and Myers.

National Union, in turn, asserts that the Kentucky courts did not determine the damages incurred by Myers which are payable under the National Union policy in this coverage litigation. National Union contends that of the $1,006,484 sought as a credit, $1,000,000 was paid by Myers' primary carrier, Republic. In addition, National Union argues that the amounts paid by Myers for reconstruction of the transmission towers include many components as to which National Union's policy affords no coverage, including: (1) salaries of the insured or any of the insured's permanent employees; (2) property damage to "work performed by or on behalf of the insured or arising out of the work or any portion thereof. . . ."; and (3) the cost of reconstructing the two standing towers.

■ Collateral estoppel has the dual purpose of "protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive

in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *see also G & T Terminal Packaging Co. v. Consolidated Rail Corp.*, 719 F.Supp. 153, 159 (S.D.N.Y.1989).

 To determine whether collateral estoppel bars the instant claims, the Court must analyze whether (1) the issues as to which preclusion is sought are identical to the issues decided in the prior proceeding; (2) the party against whom preclusion is presently sought had a full and fair opportunity to litigate the issue in the prior proceeding; and (3) the issues were necessarily decided in the prior proceeding. *See United States v. United States Currency in Amount of $228,536.00*, 895 F.2d 908, 918 (2d Cir.), *cert. denied*, 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990).

 With respect to the first requirement, the Supreme Court has held that direct identity of issues is not required. Rather, the Court must determine "first, whether the issues presented by this litigation are in substance the same as those resolved [in the prior litigation]; second, whether controlling facts or legal principles have changed significantly since the [prior litigation]; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion." *Montana v. United States*, 440 U.S. at 155, 99 S.Ct. at 974–75; *see also ITT Corp. v. United States*, 963 F.2d 561, 564 (2d Cir. 1992). Here, this first prong has not been satisfied, as the issues in question bear no resemblance to those litigated in the Kentucky action. The Kentucky courts made no determination regarding National Union's liability under the policy. The state court decision addressed the issue of Myers' liability, rather than the existence or extent of National Union's responsibilities under the policy. Thus, while the judgment against the insured is binding upon the insurer in the coverage action, it does not determine National Union's liability under the policy. Accordingly, Myers' motion to categorically exclude evidence regarding the determinations of the Kentucky courts is denied.

## D. Evidence Inconsistent with the October 1995 Opinion

 Myers next moves to exclude all evidence inconsistent with the Court's October 1995 Opinion, under the law of the case doctrine. In addition, Emar moves to exclude introduction of or reference to the Umbrella Policy, including its terms and conditions, as well as any related exhibits and testimony, on the ground that such evidence is irrelevant by reason of the Court's October 1995 Opinion, as well as this Court's Order denying National Union's motion for leave to reargue dated November 1, 1995. Finally, Myers, Emar and American Risk move for an order preventing National Union from introducing the Umbrella Policy as either proof of the knowledge, acceptance and ratification of the Umbrella Policy on the part of Myers, Emar, American Risk and Walsh, as well as proof of waiver and estoppel on the part of these parties. Myers, Emar and American Risk argue that in view of the Court's determination that the rights and liabilities of National Union and Myers are determined by the Binder, the Umbrella Policy and related exhibits are irrelevant.

 Under the law of the case doctrine, a determination by the Court at one stage of a proceeding becomes the "law of the case" to be followed in successive stages of the same litigation, thus ensuring "the orderly progress of court proceedings." *Maryland Casualty Co. v. W.R. Grace & Co.*, No. 88 Civ. 2613, 1994 WL 592267 1994 U.S.Dist. LEXIS 15322, at *21 (S.D.N.Y. Oct. 26, 1994); *Crown Zellerbach Corp. v. Goldsmith*, 609 F.Supp. 187, 189 (S.D.N.Y.1985). However, the rule "is, at best, a discretionary doctrine which 'does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided.'" *United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982) (quoting *Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 134–36 (2d Cir.), *cert. dismissed*, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956)); *see also United States v. 17,380 Square Feet of Land*, 678 F.Supp. 443, 445 (S.D.N.Y.1988) (stating that "to the extent that the law of the case doctrine exists

in federal court, it is a prudential and not a mandatory rule").

Myers requests that the Court eliminate issues resolved by partial summary judgment, pursuant to Federal Rule of Civil Procedure 56(d). The Rule provides:

Case Not Fully Adjudicated on Motion. If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed.R.Civ.P. 56(d). The purpose of Rule 56(d) is to "salvage whatever constructive results have come from the judicial effort." 6 J. Moore, *Moore's Federal Practice* ¶ 56.20, at 56–699 (2d ed. 1995); *see also URI Cogeneration Partners v. Board of Governors for Higher Educ.*, 915 F.Supp. 1267, 1279 (D.R.I. 1996). Rule 56(d) is a pragmatic provision, however, and merely empowers a court, when it would be practicable to save time and expense and to simplify the trial, to issue an order specifying facts that appear without substantial controversy. *See T.S.I. 27, Inc. v. Berman Enters.*, 115 F.R.D. 252, 255 (S.D.N.Y.1987).

Myers argues that the trial of this case, with its five parties espousing differing positions, should not be prolonged and complicated with issues and evidence that are not substantially and materially controverted. According to Myers, this issue has been argued and decided twice, in the Court's October 1995 Opinion, and in National Union's subsequent motion for a rehearing, and is thus established as law of the case. In the October 1995 Opinion, the Court held that

"as neither party objected to the terms of the Binder, and National Union accepted Myers' initial payment, the Binder became an enforceable contract on November 17, 1983, the date of payment" and "the parties are bound by the terms of the Binder." *National Union Fire Ins. Co. of Pittsburgh, PA. v. L.E. Myers Co. Group*, 1995 WL 581692, at *9–*10.

National Union argues that the law of the case doctrine is inapplicable because statements made in the October 1995 Opinion were in the context of a summary judgment motion, in which the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). According to National Union, any statement made by the Court in its prior ruling should be interpreted only in light of the limited purpose for which it was made, namely, to determine whether summary judgment was appropriate. *See Coca–Cola Bottling Co. v. Coca–Cola Co.*, 769 F.Supp. 599, 614 (D.Del.1991) (finding that a judge's rulings or opinions made in the course of denying motions for summary judgment were not binding as the law of the case), *aff'd in part and rev'd in part on other grounds*, 988 F.2d 386 (3d Cir.), *cert. denied*, 510 U.S. 908, 114 S.Ct. 289, 126 L.Ed.2d 239 (1993); *see also Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 277 (7th Cir.1994) (stating that the denial of a summary judgment motion " 'does not settle or even tentatively decide anything about the merits of the claim' ") (quoting *Switzerland Cheese Ass'n v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966)).

In holding that the Binder was the relevant insurance document, however, the Court made the legal determination that as a matter of New York law, the Binder is the contract of insurance. The only remaining

factual question, in this regard, is the identity of the "quotation" referred to in the Binder.

National Union's contention that the Court's statements regarding the supremacy of the Binder were not material to the Court's ultimate disposition is not persuasive. The denial of summary judgment was explicitly premised on the legal determination that the Binder rather than the Umbrella Policy was controlling. The Court's determination that, as a matter of law, the Binder controlled was not dicta, as asserted by National Union, and this issue need not be relitigated at trial. Thus, the Court holds, pursuant to Rule 56(d) that no issue remains for the trier of fact, and thus no "substantial controversy" exists, with respect to whether the Binder controls.[4] National Union will not be allowed to offer the Umbrella Policy in order to show that it is the operative policy and contract of insurance.[5]

## III. American Risk's Motions

### A. Evidence Regarding the Brokers' Giving Notice of the Loss

■ American Risk moves to exclude exhibits and testimony regarding untimely notice of the loss by the brokers on the ground that National Union has not disclaimed on that basis. Myers responds that American Risk has misconstrued the purpose of the proposed evidence, and that such evidence is probative and admissible to establish the negligence of the brokers. Similarly, National Union asserts that the issue of notice is relevant to the following claims: (1) that it was deprived of the opportunity to object to

repairs and renovation and to settlement with Republic; and (2) that the brokers withheld notice of claim while attempting to resolve the policy disputes.

National Union and Myers have failed to demonstrate how the actions of the brokers after the loss occurred are relevant to any issue in the case. Accordingly, American Risk's motion to exclude evidence regarding the brokers' providing notice of the loss to National Union is granted.

### B. Evidence of the Brokers' Insurance

American Risk also moves to exclude any evidence relating to American Risk's liability insurance, pursuant to Federal Rule of Evidence 411. National Union indicates in the parties' Joint Pre–Trial Order that Trial Exhibits 70 and 71 will be offered to establish "broker negligence." Joint Pre–Trial Order, dated April 17, 1996, at 51.

Federal Rule of Evidence 411 provides, in part:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully.

Fed.R.Evid. 411. The Rule also specifies that it "does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness." *Id.*

Since neither National Union, Myers nor Emar have responded to American Risk's motion with respect to this issue, and the precise basis for the evidence is not offered

---

**4.** National Union's contention that this Court's decisions in *Young v. Calhoun,* No. 85 Civ. 7584, 1995 WL 169020 (S.D.N.Y. April 10, 1995) and *Reefer and General Shipping Co. v. Great White Fleet,* No. 93 Civ. 906, 1995 WL 575290 (S.D.N.Y. Sept. 28, 1995) compel a different conclusion is unconvincing. In those cases the party who successfully defended against summary judgment argued that findings made by the Court in the context of deciding the summary judgment motion should be deemed established for trial purposes. The Court recognized, however, that findings made while drawing all inferences in favor of a non-moving party in the summary judgment context clearly cannot be subsequently binding under the law of the case doctrine. Here, however, National Union itself moved for

summary judgment, arguing that the Umbrella Policy, upon issuance, nullified and replaced the Binder. In addition, the issue was found to rest on legal, rather than factual determinations by the Court.

**5.** Similarly, evidence pertaining to the knowledge, acceptance and ratification of the Umbrella Policy, as well as the waiver and estoppel of Myers, Emar, American Risk and Walsh, are irrelevant in view of the Court's determination that the rights and liabilities of National Union and Myers are determined by the Binder, the terms and conditions of which are to be proven at trial.

in the Joint Pre–Trial Order, the Court is not presently in a position to rule on this motion *in limine*. The parties are warned, however, not to attempt to introduce at trial evidence regarding the brokers' insurance that does not fall within an exception enumerated in Rule 411.

**C. Evidence Regarding the Meaning of Policy Provisions**

 Finally, American Risk moves to exclude any extrinsic evidence as to the meaning of the various policy provisions. Specifically, American Risk contends that several parties wish to introduce the testimony of various witnesses interpreting the purpose and/or meaning of certain policy provisions, and that the introduction of such evidence would violate the parol evidence rule. The motion does not specify which evidence should be excluded or which parties intend to offer such evidence.

 This motion *in limine* lacks the necessary specificity with respect to the evidence to be excluded or the purported reason for the introduction of such evidence. While it is true that extrinsic evidence offered to contradict the clear and unambiguous terms of an insurance policy is inadmissible under the parol evidence rule, *see Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 625 (2d Cir.1993) ("interpretation of unambiguous contract language does not bring extrinsic evidence into play"), *cert. denied,* —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 559 (1994); *Gallien v. Connecticut General Life Ins. Co.*, 919 F.Supp. 139 (S.D.N.Y.1996), the current motion is too sweeping in scope to be decided *in limine*. Thus, the Court will reserve judgment on the motion until trial when admission of particular pieces of evidence is in an appropriate factual context. *See Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D.Ill.1993) (evidence should be excluded on a motion *in limine* "only when evidence is clearly inadmissible on all potential grounds ... [and] [u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial").[6]

---

**6.** The Court has considered the parties' remaining contentions and finds them to be without merit.

**CONCLUSION**

For the reasons set forth above, National Union's motions to disqualify Scotellaro and Bell, Boyd & Lloyd and exclude any reference to the Frank B. Hall proposal as a "quotation" are denied. Myers' motion to exclude evidence inconsistent with the Court's October 1995 Opinion is granted. Myers' motion to exclude any evidence that certain brokers referred to the architects and engineers errors and omissions coverage as "incidental" is granted in part and denied in part. Myers' motion to dismiss National Union's claim for negligent misrepresentation is denied at this time with leave to reinstate at trial, and Myers' motion to exclude evidence pertaining to damages determined by the Kentucky Courts is denied. American Risk's motions to exclude evidence in support of National Union's argument that the Umbrella Policy rather than the Binder controls and exclude evidence regarding the brokers' giving notice of the loss to National Union are granted. American Risk's motion to exclude evidence pertaining to National Union's claims against it is granted in part and denied in part. American Risk's motions to exclude evidence of the brokers' insurance and exclude any extrinsic evidence as to the meaning of the various policy provisions are presently denied. Emar's motions to exclude evidence pertaining to the Umbrella Policy, as well as the alleged knowledge, acceptance and ratification of the Umbrella Policy are granted. Finally, Emar's motion to exclude evidence pertaining to the alleged nondisclosure of material facts relating to the substantial architects and engineers business of Myers is presently denied, with leave to reinstate at trial. Trial shall commence on September 24, 1996 at 10:00 a.m. The parties shall submit proposed voir dires and jury charges on or before September 9, 1996.

SO ORDERED.