UNITED STATES of America,
Plaintiff,

v.

Jose Ramon PAREDES, Defendant.

No. S2 99 CR 290(PKL).

United States District Court,
S.D. New York.

Nov. 26, 2001.

**186**

Cheryl Krause, Assistant United States Attorney, Mary Jo White, United States Attorney, New York City, for plaintiff.

Erika P. McDaniel, Brooklyn, NY, John Byrnes, Federal Defender Services Unit, New York City, Lloyd Epstein, Epstein & Weil, New York City, for defendant.

### OPINION AND ORDER

LEISURE, District Judge.

Defendant, Jose Ramon Paredes, moves *in limine* requesting the Court to limit the testimony of the Government's witness, Carly Charles, in accordance with Fed. R.Evid. 801(d)(2)(E) by excluding all conversations between Ms. Charles, her husband, Greg Charles, and the other alleged coconspirators. *See* Motion at 3. For the following reasons, defendant's motion is denied.

### I. *Motions* in Limine:

■ The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (noting that although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials);

*Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996); *National Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F.Supp. 276, 283 (S.D.N.Y.1996). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*, No. 94 Civ. 5520, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998) (denying a motion *in limine* to preclude presentation of evidence regarding a potential punitive damages claim because the motion was too sweeping in scope to be considered prior to trial). Indeed, courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See National Union Fire Ins. Co.*, 937 F.Supp. at 287. Further, the court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the ... proffer." *Luce*, 469 U.S. at 41, 105 S.Ct. 460.

### II. *Rule 801(d)(2)(E):*

■ Pursuant to Fed.R.Evid. 801(d)(2)(E), "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R.Evid. 801(d)(2)(E). In order to admit an extra-judicial statement by a coconspirator under Rule 801(d)(2)(E), the district court must find by a preponderance of the evidence (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy. *See United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir.1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775,

97 L.Ed.2d 144 (1987)). In making a preliminary factual determination of these prerequisites, the court may consider the hearsay statements themselves. *See Bourjaily*, 483 U.S. at 181, 107 S.Ct. 2775. "However, these hearsay statements are presumptively unreliable, and, for such statements to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir.1996) (citation omitted). When an objection is made to the admission of alleged hearsay statements, the Court of Appeals reviews a district court's factual findings for "clear error." *United States v. Orena*, 32 F.3d 704, 711 (2d Cir. 1994) (citing *Bourjaily*, 483 U.S. at 181, 107 S.Ct. 2775).

■■■ The Government need not show that the listener, or the person who heard the declarant's statement, was also a member of the conspiracy. *See United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1198–99 (2d Cir.1989) (statements to listener admissible because they were designed to 'cover up' conspiracy and encourage listener not to reveal damaging information) (Kearse, J.) To satisfy 801(d)(2)(E)'s "in furtherance" standard, the statements must in some way have been designed to promote or facilitate achievement of the goals of the conspiracy, including, providing information or reassurance to a coconspirator or seeking assistance from a coconspirator, or by communicating with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the plan's goals. *See United States v. Rivera*, 22 F.3d 430, 436 (2d Cir.1994).

The Second Circuit has held, however, that neither "idle chatter" nor "merely narrative" description by one coconspirator of the acts of another, meet the Rule 801(d)(2)(E) test. *See Beech–Nut*, 871 F.2d at 1199 (citing *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir.1980); *United States v. Heinemann*, 801 F.2d 86, 95 (2d Cir.1986) (Winter, J.)).

### III. *Defendant's arguments:*

The defendant seeks to exclude Ms. Charles's testimony relating to her communications with her husband, Gregory Charles. The Government expects Ms. Charles to testify that in 1997, Mr. Charles introduced her to Paredes and began to make trips to New York City for him; that later Mr. Charles informed her that these trips were to transport narcotics for Paredes; that Mr. Charles would hand her thousands of dollars in cash after these trips, telling her that he had earned it from serving as a drug courier for Paredes; and that Ms. Charles would then use the money for family expenses. *See* Response at 1. The Government also expects Ms. Charles to describe one occasion wherein her husband directed her to retrieve narcotics that he had placed under the armoire in their bedroom. *See* Response at 2. Finally, Ms. Charles will likely testify that after her husband's arrest in May 1998, Mr. Charles called her from upstate New York to inform her that the authorities had arrested him while attempting to drive Paredes's nephew across the Canadian border. *See id.* During that phone conversation, Ms. Charles will explain that Mr. Charles instructed her to call Paredes to inform him of Mr. Charles's arrest, and to ask Paredes for assistance in paying Mr. Charles's legal fees and bail. *See id.*

Defendant also seeks to exclude communications that occurred between Ms. Charles and an unidentified coconspirator, ("CC–2"). According to the Government, Ms. Charles will testify that after handing to her husband the narcotics he had direct-

ed her to retrieve from their home, she drove with CC–2 to Montreal, Canada, where she was to have a meeting regarding a flower shop she wanted to open. *See* Response at 2. Thereafter, Ms. Charles will testify, CC–2 made statements to her in the car, indicating that he would drop her off at her meeting and he would go to Paredes's office to deliver the narcotics she had been asked to retrieve from her home. *See id.* Ms. Charles will then testify that CC–2 picked her up from the meeting, notified her that he was unable to drop the narcotics off at Paredes's office, and that the two then proceeded back to Paredes's office. While CC–2 was in Paredes's office for several minutes, Ms. Charles will describe how she waited in the car, and that shortly thereafter CC–2 drove Ms. Charles back to her home. *See id.*

The main thrust of defendant's argument seeking to exclude Ms. Charles's testimony regarding the various statements made to her, hinges upon his assertion that "these statements were not made in the 'course of, or in furtherance of the conspiracy.'" Motion at 2.[1] Greg Charles's statements to his wife, Paredes argues, were not intended to induce her to participate in the conspiracy, nor to promote any of the conspiracy's goals, but rather the statements amount to "little more than a husband telling his wife about a day on the job, albeit an illegal one." *Id.*

Defendant supports this contention mainly by citing to a case in the Ninth Circuit that he argues is "strikingly similar" to the case at bar. Motion at 2 (citing *United States v. Eubanks*, 591 F.2d 513

(9th Cir.1979)). In *Eubanks*, the Ninth Circuit found that while some of the conversations testified to by the wife of a deceased coconspirator were admissible under the coconspirator exception, other statements were inadmissible because they were not made in furtherance of the conspiracy. *See* 591 F.2d at 519. Like Ms. Charles in this case, the witness later became part of the conspiracy, but had testified to conversations she overheard or that she participated in with coconspirators before she became a coconspirator. *See id.* at 520.

### IV. *Discussion:*

■ At the outset, the Court must be satisfied that the proffered testimony fulfills the threshold determination required of the Court that (1) there was a conspiracy; and (2) that its members included the declarant, Mr. Charles, and the party against whom the statement is offered, the defendant, Paredes. Moreover, the Government expects to present another witness, Virgilio Gonzalez, who will testify that he too was a coconspirator and that Mr. Charles was in fact a member of this conspiracy. *See* Response at 3, n. 2. Under its preliminary factual determinations pursuant to Fed.R.Evid. 104(a), the Court will assume for purposes of this motion that these threshold considerations will be proved by the Government by a preponderance of the evidence at trial, however, it notes that the statements are subject to a motion to strike if the Government fails to establish the existence of the foundational facts. Thus, the hearsay statements are conditionally admitted into

---

1. The Government alerted the Court during its oral proffer that it seeks to admit into evidence the challenged statements as furthering the goals of *both* conspiracies charged in the indictment in this case, namely the conspiracy to distribute and possession with intent to distribute narcotics, and the conspir- acy to import and export narcotics. The Government's theory of the case, it argues, is that the defendant was involved with one overall conspiracy but that the nature of the federal narcotics statutes involved in this case necessitates charging the defendant under two different conspiracy statutes.

evidence during the government's case-in-chief. *See, e.g., United States v. Tracy,* 12 F.3d 1186, 1199 (2d Cir.1993). At the close of the government's case, if the Court determines that the government met its burden of proof with respect to the three elements outlined above, then the statements were properly submitted to the jury as part of the government's proof. *See id.* If the Court finds otherwise, it may instruct the jury to disregard the statements, or if the statements were "so large a proportion of the proof as to render a cautionary instruction of doubtful utility," the Court should declare a mistrial. *Id.* (quoting *United States v. Geaney,* 417 F.2d 1116, 1120 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970)). The Court should make the *Geaney* findings outside the presence of the jury, and the jury should not be told what facts the Court believes have been established. *See Tracy,* 12 F.3d at 1200 (explaining findings in jury's presence may unduly influence jury's determination of elements of the offenses charged).

■ Defendant argued orally that Mr. Charles's statements during his phone call to Ms. Charles after his arrest were not made "during the course" of the alleged conspiracies. *United States v. Tracy,* 12 F.3d 1186, 1196 (2d Cir.1993) (citing *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). Instead, defendant asserts, with Mr. Charles's arrest, that portion of the conspiracy had ended.

■ Generally, a statement is not made in the course of the conspiracy when it is made after the main objective of the conspiracy has been accomplished. *See Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). However, even where particular crimes have already been committed, "the conspiracy does not necessarily end; it continues until its aim has been achieved, it has been abandoned, or otherwise terminated." *United States v. Arrington,* 867 F.2d 122, 130 (2d Cir.1989). "Unless a conspirator produces affirmative evidence of withdrawal, his participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators." *United States v. Greenfield,* 44 F.3d 1141, 1150 (2d Cir.1995) (quoting *United States v. Panebianco,* 543 F.2d 447, 453 (2d Cir. 1976)). Moreover, the fact that some of the conspirators have been indicted or incarcerated does not inevitably lead to the conclusion that the conspiracy has been terminated. *See United States v. Persico,* 832 F.2d 705, 715–16 (2d Cir.1987) (conspiracy continued after incarceration of some members). The Court agrees with the Government that the nature of the statements during that phone call, namely asking Ms. Charles to call the defendant for help with Mr. Charles's payment of bail, reveals that the conspiracy was ongoing and there is no evidence thus far that Mr. Charles had made any affirmative action to withdraw.

With regard to the other challenged statements in this motion, defendant does not dispute directly the issue of whether the statements were made "during the course" of the alleged conspiracies. It is therefore presumed, based upon the defendant's arguments in his motion, that defendant concedes that the alleged conspiracy was in existence at the time the challenged statements were made, namely from at least in or about November 1997, up to and including on or about June 23, 1999. Accordingly, the Court finds at this preliminary stage that all of the challenged statements were made "during the course" of the conspiracies based upon the Government's proffered evidence.

■ Turning to the defendant's argument that the statements made by Mr.

# 190

Charles to his wife, Ms. Charles are not "in furtherance" of the conspiracy, the Court disagrees and finds that the statements are admissible non-hearsay. Coconspirator statements may be "in furtherance" of the conspiracy if they "prompt the listener to respond in a way that facilitates the carrying out of criminal activity." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir.1989) (quoting *United States v. Rahme*, 813 F.2d 31, 35 (2d Cir.1987)). In *United States v. Katsougrakis*, the defendants argued on appeal that the district court erred in allowing the wife of a deceased coconspirator to testify regarding various statements made to her by her husband about the alleged arson conspiracy. *See* 715 F.2d 769, 777–78 (2d Cir.1983). The husband's challenged statements included telling her two weeks before the arson that he was to receive $3,000 for "torching a diner," requesting her to drive him to meet with the defendant, and informing her a day before the crime that he had met with other coconspirators and received a down-payment for the commission of the crime. *See id.* at 777. The Court found that the statements furthered the conspiracy because "with his wife's assistance and knowledge-if not complete approval-he was able to carry out his criminal responsibilities with greater facility." *Id.* at 778. Similarly, in this case, Mr. Charles's statement that he would be making trips to New York City on Paredes's behalf, was an attempt to explain to Ms. Charles why there would be continued absences from his home and to explain the origins of thousands of dollars of cash that would be used to support his family. *See* Response at 3. The Court agrees with the Government that these statements by Mr. Charles helped to "promote" and "facilitate achievement of the goals of the conspiracy" because they helped to ensure that his wife knew what he was doing so that she

neither questioned his activities nor obstructed his functioning as a drug courier.

■ Furthermore, with regard to Mr. Charles's alleged directive to Ms. Charles to retrieve the narcotics from under their armoire, the statement prompted Ms. Charles to aid coconspirators, her husband and CC–2, to achieve the plan's goals. Additionally, the Government expects Ms. Charles to testify that she knew that her husband had asked her to retrieve narcotics and that she knowingly handed narcotics to him. *See* Response at 4. Certainly, Mr. Charles's command to get the narcotics furthered the goals of the conspiracy, namely, importing and exporting narcotics for distribution.

■ Mr. Charles's statements to Ms. Charles in a phone call following his arrest are also admissible non-hearsay under Rule 801(d)(2)(E). The statements commanded Ms. Charles to call Paredes in order to help Mr. Charles to be released on bail. Without this directive from Mr. Charles, his wife arguably would not have called Paredes for his help, and a drug courier would remain in jail, thus hindering the objectives of the drug conspiracy.

Defendant's reliance on the Ninth Circuit's decision in *United States v. Eubanks,* although involving similar facts to the present case, is not binding authority because this Court need not abide a decision by another circuit court. Although the *Eubanks* case provides some insight into another circuit court's interpretation of similar, though not identical, facts, the Court finds the Second Circuit's *Katsougrakis* case more persuasive in light of the facts of the present case. Moreover, other circuits, faced with similar facts, have found analogous situations to fall within the coconspirator exception. *See e.g., United States v. Clark,* 18 F.3d 1337, 1342–43 (6th Cir.1994) (testimony of coconspirator's statements to his girlfriend implicating defendant admissible because induced

her to conceal crimes and to allow use of her automobile and home to plan and carry out robbery scheme); *United States v. Curtis*, 37 F.3d 301, 307 (7th Cir.1994) (testimony of coconspirator's statements to wife admissible and not "merely dinner-time conversation" because intended to ensure wife's compliance and to advise her of police's investigation).

▆ Defendant also seeks to exclude Ms. Charles's testimony relating to statements made to her by CC–2 during their drive to Montreal. *See* Motion at 2. These statements also fall within the ambit of Rule 801(d)(2)(E). CC–2's explanation to Ms. Charles of where he would be while she was in her meeting and why he needed to return to Paredes's office after picking her up at the end of her meeting, cannot be deemed mere idle chatter. Without her acquiescence in returning to Paredes's office after her meeting, the narcotics presumably would never be delivered, thus hampering the goals of the conspiracy.

Thus, for the foregoing reasons, the Court is satisfied that the Government's proffered evidence supports a finding that the challenged statements fall within Rule 801(d)(2)(E) and are thus admissible.[2] The jury, of course, will remain free to disbelieve Ms. Charles's testimony that Mr. Charles and CC–2 made such statements, or indeed to disbelieve any part of Ms. Charles's testimony, as it would any witness in this case.

## CONCLUSION

For the reasons set forth above, the defendant's motion *in limine* is hereby denied and the challenged testimony shall be admissible provided the evidence at trial supports what was contained in the Government's proffer.

## SO ORDERED

▆

**2.** The Government does not mention the alternative applicability of Rule 804(b)(3) for admitting the challenged statements into evidence. "While idle chatter among conspirators does not satisfy the "in furtherance" requirement of Rule 801(d)(2)(E), often these statements are admissible as declarations against penal interest." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir.1999) (citing *United States v. Paone*, 782 F.2d 386, 390–91 (2d Cir.1986)); *see also United States v. Desena*, 260 F.3d 150, 158 (2d Cir.2001) (error in admitting statements under co-conspirator exception was harmless because could have been admissible under Rule 804(b)(3)); *United States v. Katsougrakis*, 715 F.2d 769, 778–79 (2d Cir.1983) (statements of co-conspirator to his wife were admissible under either co-conspirator exception or Rule 804(b)(3)).

Rule 804(b)(3) provides that statements are not excluded by the hearsay rule if the declarant is unavailable as a witness, and the statement was "at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant

against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed.R.Evid. (804)(b)(3). The Second Circuit has held that the declarant need not be aware that the incriminating statements subject him to immediate criminal prosecution, rather the Rule simply requires that the statement "rended to subject the declarant to criminal liability so that a reasonable man in his position would not have made the statement unless he believed it to be true." *Katsougrakis*, 715 F.2d at 778–79 (citing *United States v. Lang*, 589 F.2d 92, 97 (2d Cir.1978)) (statement to undercover agent indicating witness's criminal conduct against interest even though declarant was not aware that statement subjected him to criminal liability). Of course, before Rule 804(b)(3) could apply in this case, the Government must prove that the declarant is unavailable and that there are adequate guarantees of trustworthiness. *See United States v. Petrillo*, 237 F.3d 119, 122–23 (2d Cir.2000) (noting that the Second Circuit has never decided whether a statement against penal interest under Rule. 804(b)(3) qualifies as a firmly-rooted hearsay exception).