Raymond H. WECHSLER, Administrative Trustee of the Towers Financial Corporation Administrative Trust, Plaintiff,

v.

HUNT HEALTH SYSTEMS, LTD., P&G Enterprises, Inc., MHTJ Investments, Inc., Esperanza Health Systems, Ltd. and Friendship, Inc., Defendants.

No. 94 Civ. 8294(PKL).

United States District Court, S.D. New York.

Oct. 16, 2003.

Joseph G. Calao, Leader & Berkon LLP, New York, NY, Daniel J. Kelly, Gadsby Hannah LLP, Boston, MA, for Plaintiff.

Brooks Banker, Jr., Brooks Banker & Assocs., New York, New York, for Defendants.

## OPINION AND ORDER

LEISURE, Circuit Judge.

Plaintiff Raymond H. Wechsler, the administrative trustee overseeing the assets of Towers Financial Corporation ("Towers"),[1] brings this action against Hunt Health Systems, Ltd. ("Hunt Health") and affiliated entities for alleged breach of contract and fraudulent conveyance in connection with the parties' factoring agreements. Defendants now bring eight motions *in limine* for pre-trial rulings, and one motion to strike. The Court addresses each of defendants' motions below.

The Court assumes familiarity with the factual and procedural history of this case, set forth in its prior decisions.[2] The Court reviews below only those facts necessary to determine each of defendants' motions.

1. As this Court has previously noted, by Order of United States Bankruptcy Judge Prudence Carter Beatty dated August 5, 1999, the Towers Financial Administrative Trust was terminated and the Trust's claim against Hunt Health was assigned to Raymond H. Wechsler in his personal capacity.

2. *See Wechsler v. Hunt Health Systems, Ltd.,* 285 F.Supp.2d 343 (S.D.N.Y.2003) (not yet reported) (denying defendants' motion to reconsider this Court's order granting plaintiff's motion to bifurcate the trial); No. 94 Civ. 8294, 2003 WL 22024043 (S.D.N.Y. Aug. 27, 2003) (not yet reported) (denying defendants' motion in limine to bar plaintiff from proffering evidence relating to attorney's fees and expenses incurred before August 5, 1999); No. 94 Civ. 8294, 2003 WL 21998980 (S.D.N.Y. Aug. 22, 2003) (not yet reported) (denying defendants' motion in limine for permission to draw a negative inference against plaintiff as a result of Michael Rosoff's assertion of the Fifth Amendment privilege against self-incrimination); No 94 Civ. 8294, 2003 WL 21998985 (S.D.N.Y. Aug. 22, 2003) (not yet reported) (denying defendants' motion in limine to preclude plaintiff from proffering non-Bates-stamped documents, reserving judgment on admissibility of plaintiff's non-Bates-stamped documents for trial); No. 94 Civ. 8294, 2003 WL 21878815 (S.D.N.Y. Aug.

8, 2003) (not yet reported) (granting plaintiff's motion to bifurcate the trial into non-jury and jury phases); No. 94 Civ. 8294, 2003 WL 470330 (S.D.N.Y. Feb. 25, 2003) (addressing defendants' letter requests concerning perceived inadequacies in expert report of Andrew Peter Prague for plaintiff); 94 Civ. 8294, 2002 WL 31106348 (S.D.N.Y. Sept. 20, 2002) (unreported) (setting amount of sanctions imposed against defendants); 216 F.Supp.2d 347 (S.D.N.Y.2002) (denying defendants' motion for summary judgment on public policy grounds, granting plaintiff's motion for sanctions against defendants); 198 F.Supp.2d 508 (S.D.N.Y.2002) (granting in part and denying in part plaintiff's renewed motion for summary judgment and plaintiff's and defendants' cross-motions to strike the affidavit of opposing witnesses); 186 F.Supp.2d 402 (S.D.N.Y. 2002) (denying defendants' motion to reconsider parts of the Court's first summary judgment decision, granting in part defendants' motion to amend their answer nunc pro tunc, granting in part plaintiff's motion to strike sections of defendants' amended answer); 94 Civ. 8294, 1999 WL 672902 (S.D.N.Y. Aug. 27, 1999) (granting defendants' motion to preclude plaintiff from arguing that the letter agreement between the parties had expired prior to Hunt Health's request for a payment); 94 Civ. 8294, 1999 WL 397751 (S.D.N.Y. June

## Discussion

### I. *Motion In Limine Standard*

 The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (noting that, although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials); *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir.1996); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group,* 937 F.Supp. 276, 283 (S.D.N.Y.1996). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Medical, Inc.,* No. 94 Civ. 5520, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998) (denying a motion *in limine* to preclude presentation of evidence regarding a potential punitive damages claim because the motion was too sweeping in scope to be considered prior to trial). A court considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co.,* 937 F.Supp. at 287. Further, the court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the ... proffer." *Luce,* 469 U.S. at 41, 105 S.Ct. 460.

The Court notes at the outset that defendants' motions *in limine,* and this Court's rulings on defendants' motions set forth below, apply with equal force to the non-jury and jury phases of the trial in this matter. The trial of this matter will proceed in two phases, a non-jury phase and a jury phase. *See Wechsler,* No. 94 Civ. 8294 (granting plaintiff's motion to bifurcate the trial). Defendants' motions *in limine* call on this Court to make *preliminary* determinations on the admissibility of certain proffered evidence under Rule 104 of the Federal Rules of Evidence. Fed.R.Evid. 104(a) ("Preliminary questions concerning the qualification of a person to be a witness ... or the admissibility of evidence shall be determined by the court ...."); *see Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 592 n. 10, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Johnson Elec. North America, Inc. v. Mabuchi Motor America Corp.,* 103 F.Supp.2d 268, 279 (S.D.N.Y.2000). This Opinion and Order thus determines whether the forecasted evidence challenged by defendants may be presented to the trier of fact, which is the Court during the trial's first phase and the jury during its second phase. Once this Court makes a determination that certain forecasted evidence is admissible, the trier of fact will consider the weight and sufficiency of the evidence presented at each phase of the trial. *See, e.g., In re Joint Eastern & Southern District Asbestos Litigation,* 52 F.3d 1124, 1132 (2d Cir. 1995) ("Once certain pieces of scientific evidence pass the admissibility threshold, ... the 'appropriate' means of challenging those which appear shaky or unreliable include the 'traditional' devices of '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" (quoting *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786)).

16, 1999) (granting in part and denying in part plaintiff's motion for summary judgment, denying defendants' motion for summary judgment, and denying plaintiff's motion to strike).

## II. Defendants' Motion to Preclude the Testimony of Plaintiff's Expert Witness Andrew Prague

Defendants move to preclude the testimony of plaintiff's expert witness, Andrew Peter Prague. Defendants argue that Prague lacks expert qualifications, that his testimony will not assist the trier of fact, and that his testimony is unduly prejudicial.

Prague is a Certified Public Accountant with 17 years of experience in financial accounting and tax preparation. *See* Supplemental Expert Report of Andrew Peter Prague, at 1–2 (served May 7, 2003) ("Prague Supplemental Report"). Prague is the sole principal of Prague and Company, P.C., an accounting firm that audits and reviews the records of partnerships, and has prepared more than 100 partnership tax returns. *Id.* Prague's work can be loosely labeled "forensic accounting," *id.;* Deposition Transcript of Andrew Prague, at 15 (deposition taken April 9, 2003) ("Prague Dep."), and in this field Prague has experience reviewing and analyzing complicated record keeping of businesses. In this case, Prague has reviewed thousands of documents related to defendant Hunt Health's business. *See* Prague Supplemental Report, at 2–3. Upon analyzing these documents, Prague has rendered opinions about Hunt Health's solvency and Hunt Health's methods for accounting for accounts receivable. *See* Prague Supplemental Report, at 4–18; Prague Dep., at 112. Prague has submitted an affidavit, written an expert report, has been deposed by defendants, and will testify at the trial in both phases this matter. *See* Affidavit of Andrew P. Prague (sworn to Jan. 27, 2000) ("Prague Aff."); Prague Supplemental Report; Prague Dep.; Joint Pretrial Order, at 66 (filed May 20, 2003).

■ By moving *in limine* to preclude plaintiff from proffering the testimony of Prague, defendants challenge the admissibility of Prague's testimony. "The 'admissibility' and 'sufficiency' of scientific evidence necessitate different inquiries and involve different stakes. Admissibility entails a *threshold* inquiry over whether a certain piece of evidence ought to be admitted at trial." *In re Joint Eastern & Southern District Asbestos Litigation,* 52 F.3d at 1132 (emphasis in original); *see* Fed.R.Evid. 104(a). Rule 702 of the Federal Rules of Evidence and *Daubert,* discussed below, govern the admissibility of expert testimony. The trier of fact, on the other hand, is tasked with considering the sufficiency, or weight, of admitted expert testimony, and does so only after an opponent has an opportunity to challenge the expert testimony with "vigorous cross-examination, presentation of contrary evidence," and summation. *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786; *Amorgianos v. National R.R. Passenger Corp.,* 303 F.3d 256, 267 (2d Cir.2002); *Campbell v. Metropolitan Property & Casualty Ins. Co.,* 239 F.3d 179, 186 (2d Cir.2001) ("[T]he weight of the evidence is a matter to be argued to the trier of fact . . . ."); *Borawick v. Shay,* 68 F.3d 597, 610 (2d Cir.1995) ("[T]he Court [in *Daubert* ] expressed its faith in the power of the adversary system to test shaky but admissible evidence." (internal quotations omitted)); *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir. 1995) ("[Defendant's] quibble with [plaintiff's expert's] academic training . . . and his other alleged shortcomings . . . were properly explored on cross-examination and went to his testimony's weight."); *In re Eastern & Southern District Asbestos Litigation,* 52 F.3d at 1132. In this case, therefore, the trier of fact at each phase of the trial will determine whether or not to

accept Prague's opinion and what weight to give it.[3]

■■■ Rule 702 in the context of this discussion and *Daubert* govern the *admissibility* of expert testimony. Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702; *see Daubert*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Applying these factors to proffered expert testimony, a district judge assumes a "gatekeeping" role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786; *Amorgianos*, 303 F.3d at 265. This Court's gatekeeping function applies not only to proffered scientific expert testimony, but also to "testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *see Katt v. City of New York*, 151 F.Supp.2d 313, 353–57 (S.D.N.Y.2001). In this role, district judges have broad discretionary authority "to determine [the] reliability [of an expert's testimony] in light of the particular facts and circumstances of the particular case." *Kumho*, 526 U.S. at 158, 119 S.Ct.

1167; *see Amorgianos*, 303 F.3d at 265; *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.1996); *see also McCullock v. H.B. Fuller Co.*, 981 F.2d 656, 657 (2d Cir.1992) ("[T]he broad discretion of the trial court to determine the qualifications of witnesses will not be disturbed unless its ruling was manifestly erroneous." (internal quotations omitted)).

### A. *Prague Is Qualified To Testify at Trial*

■■ Defendants contend that Prague's "status as an accountant does not qualify him to render expert testimony in this case." Defendants' Memorandum in Further Support of Motion in Limine to Preclude the Testimony of Plaintiff's Expert Witness Andrew Peter Prague, at 1 ("Defendants' Reply"). Defendants list Prague's alleged failings as follows: Prague has little or no experience with the health care industry, and, in particular, with Explanation of Benefit forms used in the industry; Prague has little experience testifying as an expert and does not conclusively hold himself out as an expert; and Prague has not taught or published in the accounting field. *See* Defendants' Motion In Limine To Preclude the Testimony of Plaintiff's Expert Witness Andrew Peter Prague, at 3–7 ("Defendants' Motion").[4] Plaintiff counters that detailed knowledge of the health care industry is not a requisite qualification, forensic accountants have testified in other cases as experts, and Prague's testimony in a related matter additionally qualifies him to testify in this matter. Plaintiff's Opposition to Defendants' Motion In Limine To Preclude the

---

**3.** This Court routinely warns the jury to make its own determination, based on the testimony presented at trial, whether an expert's testimony is reliable and what weight to give it. In non-jury trials, the Court heeds the same warning.

**4.** Within each section of this opinion, this Court uses "Defendants' Motion," "Plaintiff's Opposition," and "Defendants' Reply" to refer to the relevant memoranda of law submitted by the parties on each motion in limine.

Testimony of Plaintiff's Expert Witness Andrew Peter Prague, at 6–10 ("Plaintiff's Opposition").

 Prague's qualifications satisfy this Court that he should be admitted to testify. *See* Prague Supplemental Report, at 1–2. Prague is a Certified Public Accountant with 17 years of experience reviewing financial documents. Plaintiff has retained Prague to analyze thousands of records concerning Hunt Health's accounts receivable, a job for which an accountant is properly qualified. *See* Prague Dep., at 125 ("[My accounting firm is] called on very frequently to render an opinion on whether or not the financial viability or solvency of a business is correctly recorded in their books and records and financial statements."). Prague's credentials satisfy Rule 702's flexible standard. Whether or not Prague has "taught in an educational institution" or published in his field necessarily go to the weight, rather than the admissibility, of Prague's testimony. *See McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043–44 (2d Cir.1995) ("Disputes as to the strength of … credentials … goes to the weight, not the admissibility of … testimony."); *Ulico Casualty Co. v. Clove Capital Mgmt.,* 217 F.Supp.2d 311, 318 (N.D.N.Y.2002).[5]

Moreover, Prague qualifies to testify as an expert in this matter. At his deposition, Prague answered that he has not performed forensic accounting services that involved the health care industry apart from his work in litigation related to Towers. Prague Dep., at 75–76. Defendants thus characterize Prague's background as suffering a "paucity of relevant experience [that] disqualifies [him] as an expert here." Defendants' Motion, at 6. Certainly an expert with extensive experience reviewing

records of health care providers would qualify to testify in this matter, but Rule 702 does not require such specificity among the backgrounds of proposed expert witnesses. *See* Fed.R.Evid. 702; *cf. McCullock,* 61 F.3d at 1043 ("[Defendant]'s suggestion that [the expert witness] had to be a specialist in environmental medicine to provide expert testimony in this case is an unwarranted expansion of the gatekeeper role announced in *Daubert.*"). "The law does not insist on such narrow qualifications." *Ulico,* 217 F.Supp.2d at 317. Indeed, the cases to which defendants cite to support excluding Prague's testimony because he lacks specific qualifications do not support such a conclusion. In *ProtoComm Corp. v. Novell Advanced Services, Inc.,* 171 F.Supp.2d 473 (E.D.Pa.2001), for example, defendants argued that "while [the expert] is a qualified accountant, he is not qualified to render opinions regarding fraudulent conveyances or wrongful liquidation." *Id.* at 478. The court admitted the expert's testimony, however, finding that the expert had "specialized knowledge … beyond that of the average layman in the areas most relevant to th[e] case: the characterization of complex business transactions and fraudulent conveyances." *Id.* at 478–79. Prague likewise qualifies as an expert to testify on complex business transactions. *See also Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 82 (2d Cir.1997) (admitting expert testimony from witness who lacked specific experience with airport baggage delivery systems because witness had general experience with the "interaction between people and machinery"); *Byrne v. Liquid Asphalt Systems, Inc.,* 238 F.Supp.2d 491, 494–95 (E.D.N.Y.2002) (excluding witness who would testify on a "more practical" design for an "asphalt

---

**5.** Nor does Prague's reluctance to categorize his opinions as "expert" cause this Court to exclude his testimony. "Expert" and "lay" testimony are legal distinctions, of which no witness need be aware to qualify as an expert whose testimony is admissible.

kettle," when the witness had never built or worked on any asphalt kettle and had only seen one in operation four or five times over 50 years); *Bruno v. Toyotomi U.S.A., Inc.,* 203 F.R.D. 77, 80 (N.D.N.Y. 2001) (excluding witness who would "opine on the properties of kerosene as compared to other flammable materials," because witness is "just an insurance adjuster," not even "remotely qualified"). Whether Prague is more or less qualified than witnesses in other cases, or than an ideal expert in this case, does little to justify excluding his testimony in this case. Again, defendants' arguments better relate to the weight, rather than the admissibility, of Prague's testimony.[6] As a preliminary matter under Rule 104 of the Federal Rules of Evidence, Prague's qualifications satisfy this Court that his testimony should be admitted to testify at trial.

## B. *Prague's Testimony May Assist the Trier of Fact*

Defendants contend that Prague's analysis is unreliable and that it impermissibly usurps the role of the Court and the trier of fact. Defendants claim that Prague's analysis is not reliable because Prague relies on "the wrong documents," and that Prague cannot support his calculations about Hunt Health's accounts receivable. Defendants continue that Prague's testimony usurps the role of the Court and the trier of fact because Prague offers legal conclusions, and, perhaps alternatively, the trier of fact does not need Prague's testimony to understand the accounts receivable at issue.

As a gatekeeper, a trial court must ensure that admitted testimony is relevant and reliable. Evidence that "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. Fed.R.Evid. 401; *see Amorgianos v. National R.R. Passenger Corp.,* 303 F.3d 256, 265 (2d Cir.2002).[7] Once a district court determines that evidence is relevant, it "must determine 'whether the proffered testimony has a sufficiently "reliable foundation" to permit it to be considered.'" *Amorgianos,* 303 F.3d at 265 (quoting *Daubert,* 509 U.S. at 597, 113 S.Ct. 2786). "In short, the district court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* at 266 (quoting *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167).

### 1. *The Trier of Fact Will Determine Whether Prague's Analysis Is Reliable*

Defendants do not contest the relevance of Prague's proffered testimony, but argue, rather, that Prague's analysis is unreliable. This Court finds to the contrary that, as a preliminary matter, Prague's analysis is reliable enough to be admitted at trial. First, defendants fail to demonstrate that the records upon which

6. As Prague qualifies to testify as an expert in this case, this Court need not address whether testifying in the related *New Medico* matter bolsters Prague's qualifications as an expert before this Court. *See* Plaintiff's Opposition, at 8–10; Defendants' Reply, at 3.

7. Articulating the standard for relevant evidence in their moving papers, defendants omit "has any tendency to" from the language they quote in Rule 401 of the Federal Rules of Evidence. Defendants' Motion, at 8. Defendants thoroughly reference case law in their brief, and perhaps such a minor omission reflects merely an oversight. But the omission effectively misrepresents the clear, settled standard for relevant evidence.

Prague relied are unreliable. Prague relied on "Hunt Health's internal accounting records, statements of financial position and Hunt Health's monthly general ledger reports." Prague Supplemental Report, at 4. For example, defendants cite[8] to deposition testimony, *see* Defendants' Motion, at 9 n. 12, none of which supports a claim that Hunt Health's records are unreliable.[9] At most, the testimony implies that Prague's analysis could be more reliable had he not based his opinions solely on Hunt Health's documents. Prague analyzed Hunt Health's documents with the same "intellectual rigor" he would use in his practice as an accountant. Defendants' arguments go to the weight of his testimony rather than the admissibility. The trier of fact will determine the extent to which Prague's analysis should be relied upon.

 Second, Prague bases his calculation that "at least $2,807,078.78 of receivables at February, 28, 1993 were either non-reimbursable or had been disputed, denied, appealed or paid" on methods reliable enough to satisfy this Court that his testimony should be admitted. Prague Supplemental Report, at 10. Prague determined that $1,309,248.22 in accounts receivable were non-reimbursable accounts by using the codes for each account receivable supplied by Kerr Medical Billing Services ("KMBS") on behalf of Hunt Health.

*Id.; see* Deposition Transcript of Hunt Health Systems, Inc., at 39 ("Hunt Health Deposition"). Defendants need not have admitted that these accounts were, by definition, non-reimbursable. *See* Defendants' Motion, at 11. Prague could conclude, based on the codes supplied in discovery that classify each receivable, that some of the accounts failed to qualify as reimbursable accounts according to the definition in the HCP Agreement between the parties. Moreover, defendants' argument that Prague relies on hearsay to calculate the amount of non-reimbursable accounts is to no avail, as "expert testimony ... can, under certain conditions, be based on hearsay." *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir.2000); *see* Fed.R.Evid. 703. Such conditions apply here, because Prague reasonably relied on documents supplied by defendants to make a determination of how defendants accounted for their accounts receivable.[10] *See id.; United States v. Daly*, 842 F.2d 1380, 1387 (2d Cir.1988) ("[I]f experts in the field reasonably rely on hearsay in forming their opinions and drawing their inferences, the expert witness may properly testify to his opinions and inferences based upon such hearsay."); *see also United States v. Dukagjini*, 326 F.3d 45, 57 (2d Cir.2003) ("The [trier of fact] must assess the credibility of the opinion of the expert, who is presumed to have the skill to properly

8. Opposing defendants' argument that Prague relied on inaccurate information, plaintiff counters that the argument is "unsupported," and later repeats, "unsupported by any reference to the record." Plaintiff's Opposition, at 13–14 (citing Defendants' Motion, at 9). Defendants, however, cite to the record in three places on the very page of their brief with which plaintiff takes issue. Defendants' Motion, at 9 n. 12.

9. John Alario, for example, testified at his deposition that more information could be learned about a claim by calling the insurance carrier in addition to observing the Explanation of Benefits form. Deposition Transcript

of John Alario, at 15. This statement does not support defendants' argument that Prague's analysis should be excluded. At best, Alario's statement supports an argument that Prague's expert report would be more reliable had he phoned every insurance carrier.

10. Because Prague reasonably relied on the records provided by KMBS, this Court makes no determination here whether the documents on which Prague relied are hearsay. This Court addresses below the letter from Clay Corder constituted a binding admission as to the meaning of the codes. *See* Plaintiff's Opposition, at 15; *infra*.

evaluate the hearsay, and is, of course, available to be cross-examined." (internal quotations omitted)).

Prague also determined that an additional $1,497,830.56 in accounts receivable were disputed, denied, appealed, or paid, because a certain amount of time had elapsed and Hunt Health had not yet received a payment. Prague Supplemental Report, at 9–11; Prague Dep., at 155. Defendants' hyperbole that Prague "conjured" this method notwithstanding, this Court admits Prague's testimony. Prague explained his method for classifying accounts receivable. Prague Supplemental Report, at 9 ("On average, it took fifty-five days between the last date of service and the time Hunt Health received either payment or notification of the denial. At February 28, 1993, $1,497,830.56 in reimbursable receivables had been outstanding for at least sixty days."). Defendants' attacks should be made on cross-examination, rather than within a motion to exclude.

### 2. *Prague Does Not Usurp the Role of the Court or the Trier of Fact*

■ Defendants contend that Prague usurps the role of this Court by giving legal conclusions. Defendants' Motion, at 17. In particular, defendants highlight Prague's statements that "at least $2,807,079 [of Hunt Health's receivables] were either non-reimbursable accounts or were disputed, denied, appealed, or paid," Prague Supplemental Report, at 10, and distributions made to Hunt Health's partners "had a material adverse condition on the financial well being of the company." *Id.* at 17; *see* Defendants' Motion, at 19–20.[11]

■ Although an expert may opine on the ultimate issue of fact, he "may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see* Fed.R.Evid. 704 advisory committee's note; *Fiataruolo v. United States*, 8 F.3d 930, 941–42 (2d Cir.1993); *United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (Winter, J.) ("[B]ecause [the expert's] opinions were calculated to invade the province of the court to determine the applicable law and to instruct the jury as to that law, they could not have been helpful to the jury in carrying out its legitimate functions." (internal quotations omitted)); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, 95 Civ. 3901, 1999 WL 946354, at *2 (S.D.N.Y. Oct. 19, 1999) (Leisure, J.). Here, Prague does not usurp the function of the Court. Neither statement constitutes a legal conclusion, and admittance of Prague's factual conclusions presents no danger of confusion in this case. *Compare Media Sport*, 1999 WL 946354, at *3 (excluding legal opinions on issues of contract formation offered as "expert" testimony).

Defendants also contend that Prague's testimony about the status of Hunt Health's accounts will not assist the trier of fact because, essentially, any trier of fact presented with the facts and the law will understand Hunt Health's accounts. *See* Defendants' Motion, at 20–21 ("Mr. Prague, therefore, has nothing to offer."). The Court disagrees. Prague's proffered testimony relates to a complicated series of transactions and to Hunt Health's records for those transactions. The Court

11. Defendants correctly argue that Prague's statement in his original report that "the April 2, 1993 transaction was made without fair consideration or in bad faith" equates to a inadmissible legal conclusion. Defendants' Motion, at 18. Prague, however, in his supplemental report submitted to the Court pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, struck this legal conclusion from his report. Therefore the Court need not address Defendants' argument that the statement usurps the role of the Court. The Court addresses below defendants' motion to strike Prague's supplemental report. *See infra* Section X.

has already recognized the incredible complexity of this case, *Wechsler*, 198 F.Supp.2d at 524, referring not only to the procedural history of this case but to the disputed facts. Plaintiff offers Prague to testify about records that might confuse the trier of fact in the absence of such testimony.[12]

In sum, the arguments addressed above, the Court has noted, do not lack merit, but are better aimed at the weight of Prague's testimony than its admissibility. Prague, a qualified accountant with relevant expertise, presents a useful witness in this case, which, after nine years of pre-trial litigation, remains simply a case about a contract for the sale and purchase of accounts receivable. The Court rules, as a preliminary matter under Rule 104 of the Federal Rules of Evidence, that Prague's proffered testimony is admissible. Defendants' motion to preclude the testimony of Andrew Prague is denied.[13]

III. *Defendants' Motion In Limine that the Trier of Fact Draw a Negative Inference Against Plaintiff as a Result of Plaintiff's Failure to Produce Towers' Records*

■ Defendants contend that the trier of fact must draw a negative inference against plaintiff because plaintiff failed to produce records. Defendants cite to deposition testimony to support their contention that Towers kept accurate records, arguing that the records thus were "[o]f great interest to defendants." Defendants' Reply in Further Support of Their Motion In Limine that the Trier of Fact Draw a Negative Inference Against Plaintiff as a Result of Plaintiff's Failure to Produce Towers' Records, at 5 ("Defendants' Reply"). Defendants note that plaintiff produced Towers' records in *New Medico*, another action involving Towers in Massachusetts. Defendants claim that plaintiff "steadfastly refused to produce these documents" in this matter, Defendants' Motion In Limine that the Trier of Fact Draw a Negative Inference Against Plaintiff as a Result of Plaintiff's Failure to Produce Towers' Records, at 1 ("Defendants' Motion"), thus the Court should instruct the trier of fact to draw a negative inference against plaintiff.[14] Plaintiff responds that he has complied with defendants' discovery requests, thus any negative inference would lack a basis.

■ "Where . . . the nature of [an] alleged breach of a discovery obligation is

**12.** Defendants alternatively argue that even if Prague's testimony is admissible, it is unduly prejudicial. *See* Fed.R.Evid. 403. Prague's mere status as an expert, alone, threatens no prejudice that this Court can foresee. In any event, any prejudice that Prague's expert status might cause will not substantially outweigh the probative value of his testimony. *Id.*

**13.** While the Court denies defendants' motion in limine to preclude Prague's testimony, it notes that Prague will not be permitted to testify without limit before the trier of fact in the bench trial or the jury trial. The Second Circuit has demarcated the boundaries for expert testimony, and Prague's testimony must accordingly remain within those boundaries. *See, e.g., Scop*, 846 F.2d at 139 ("Rule

704 was not intended to allow experts to offer opinions on embodying legal conclusions."); *Media Sport*, 1999 WL 946354, at *2–3 (clarifying the bounds of admissible expert testimony, citing cases). Denying defendants' motion in limine, the Court simply rules that no alleged defect in Prague's qualifications, analysis, or conclusions presently justifies precluding him from testifying.

**14.** The Court notes that defendants do not specify what the trier of fact would negatively infer from plaintiff's alleged failure to produce documents. Defendants seem to ask that the trier of fact simply draw an abstract negative inference that Towers' records somehow include information harmful to plaintiff's case.

the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction, including the discretion ... to proceed with a trial and give an adverse inference instruction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir.2002). A party seeking a negative inference based on failure to produce evidence must show "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.*

Defendants show neither that plaintiff had an obligation to produce Towers' records, nor that plaintiff had a culpable state of mind. Defendants offer no evidence and cite to no part of the procedural history of this case that supports their sudden allegations that plaintiff "steadfastly refused" to produce documents. The only attempt defendants make to show that plaintiff failed to comply with discovery requests takes the form of an unsigned, undated, non-descript exhibit attached to their reply brief. Conversely, plaintiff offers the affidavit of Richard Mancino, Esq., to show that he complied with defendants' discovery requests. Plaintiff's Opposition to Defendants' Motion In Limine that the Trier of Fact Draw a Negative Inference Against Plaintiff as a Result of Plaintiff's Failure to Produce Towers' Records, Exh. A ("Plaintiff's Opposition"). Magistrate Judge Pitman oversaw discovery in this case, which concluded five years ago, and this Court finds no basis for the allegation that plaintiff failed to comply with defendants' discovery requests, much less for an allegation that plaintiff participated in discovery with a culpable state of mind. Because defendants fail to show,

and indeed hardly argue, that plaintiff failed to comply with discovery requests, whether Towers' records were accurate or produced in a separate litigation lacks any bearing on defendants' motion.

The cases defendants cite to support their position in fact support the contrary. In *Smoothline Ltd. v. North American Foreign Trading Corp.*, for example, the Court permitted the trier of fact to draw a negative inference against plaintiffs because plaintiffs repeatedly failed to comply with explicit document requests made by defendant and reinforced by the Court at discovery conferences. No. 00 Civ. 2798, 2003 WL 941442, at *2–5 (S.D.N.Y. March 7, 2003). Unlike plaintiff in this case, plaintiffs in *Smoothline* did not contest that they had failed to comply with document requests. Plaintiffs instead argued unsuccessfully that they did not understand defendant's document requests, and temporarily argued that the sought after records did not exist. *Id.* Defendant properly challenged plaintiffs' failure to comply with the discovery request, and prevailed upon a motion for a negative inference once the Court found that it "and the parties have operated ... with the understanding that [plaintiffs] would produce the financial records responsive to [defendant's] document requests that were sufficient to understand the financial relationships among the companies." *Id.* at *2. Moreover, the Court emphasized that "the failure to produce these financial records had a profound effect on [defendant's] ability to illuminate the relationship between [the plaintiffs]." *Id.* In *Smoothline*, unlike in this case, the plaintiffs failed to comply with repeated discovery requests and defied the understanding reached by the parties and the Court during discovery. *See also Residential*, 306 F.3d at 103–04 (detailing appellant's repeated assurances to appellee and the court that it would pro-

duce emails, which it ultimately failed to produce out of "purposeful sluggishness").

Accordingly, defendants' motion to obtain a negative inference against plaintiff is denied.

IV. *Defendants' Motion in Limine To Bar Plaintiff from Proffering Letter Related to Account Codes Purportedly Utilized by Kerrville Medical Billing Services*

■ Defendants move to prevent plaintiff from proffering Plaintiff's Exhibit 406. Plaintiff's Exhibit 406 is a letter from Clay Corder, an employee of Kerrville Medical Billing Services ("KMBS"), to Brooks Banker, Jr., Esq., counsel for defendants, briefly explaining the coding system used to classify Hunt Health's accounts receivable. Defendants contend that the letter is not authenticated, and that in any event it includes inadmissible hearsay. Plaintiff responds that the letter presents a binding admission under Rule 30(b)(6) of the Federal Rules of Civil Procedure. Defendants reply that it offered the letter merely as a "courtesy" to plaintiffs and did not do so in lieu of testimony pursuant to Rule 30(b)(6).

On February 5, 1998, plaintiff deposed defendant Hunt Health pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. At the deposition plaintiff's counsel asked the representatives for Hunt Health about the billing codes it used on its aged accounts receivable reports. Deposition Transcript of Hunt Health Systems, at 38–40 ("Hunt Health Dep.").

Hunt Health's designated 30(b)(6) representatives could not answer about the meaning of the billing codes, but indicated that KMBS prepared the reports and would know the meaning of the codes. *See id.* at 38–40, 59. Hunt Health's representatives stated that KMBS prepared the accounts receivable reports on behalf of Hunt Health, as an agent. *See id.* at 59. Plaintiff's counsel repeated that information deciphering the codes was necessary, and defendants' counsel repeated that he would obtain the information from KMBS, particularly Clay Corder. *See id.* at 40, 60, 164.[15] Defendants did not help plaintiff understand the codes until January 2000, when they forwarded to plaintiff, "as a courtesy," a letter from Clay Corder to Brooks Banker, Jr., Esq. *See* Plaintiff's Opposition to Defendants' Motion in Limine To Bar Plaintiff from Proffering Letter Related to Account Codes Purportedly Utilized by Kerrville Medical Billing Services, Exh. O ("Plaintiff's Opposition"). This letter gives brief explanations of the codes on the accounts receivable reports. It is this letter that defendants now move to preclude *in limine.*

Rule 30(b)(6) of the Federal Rules of Civil Procedure sets out the guidelines for deposing a corporation, including the method by which individuals testify "on behalf" of the corporation. *See Reilly v. Natwest Markets Group, Inc.,* 181 F.3d 253, 268 (2d Cir.1999). Here, classifying the January 10, 2000 letter from Clay Corder as a Rule 30(b)(6) admission would

---

**15.** For example,

> [Plaintiff's lawyer]: Now, Mrs. Dittmar, are you in a position to explicate what these codes mean?
> A: (By Ms. Dittmar): No.
> [Plaintiff's lawyer]: Okay. Well, that's really something I need in connection with the understanding the Proof of Claim and being able to respond to it.
> . . .

> Mr. Banker [defendants' lawyer]: I should just note for the record, Mr. Mancino, that this is a document prepared by KMBS and used by KMBS in its handling of the Aged Accounts Receivable Report it prepared on behalf of Hunt Health Systems. We're perfectly happy to lend our best efforts to understanding this.

Hunt Health Dep., at 164.

work a novel application of the law. Plaintiff cites to no case that supports expanding the scope of Rule 30(b)(6) to include as an admission a letter authored by an individual who was not chosen as a representative at the deposition, who does not even work for the company being deposed. Defendants, however, do not cite to any cases to support an argument that the letter is not a Rule 30(b)(6) admission.[16] Additionally, defendants' authenticity and hearsay challenges do not persuade this Court that their motion *in limine* to preclude the letter should be granted. The letter's authenticity should be easily established at trial, as "Rule 901 [of the Federal Rules of Evidence] does not erect a particularly high hurdle." *See United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir.2001) (internal quotations omitted); *infra* Section VII. Moreover, ruling on defendants' hearsay challenge to the letter would be premature at this time. Defendants' motion *in limine* is therefore denied. The Court reserves judgment on the admissibility of the Clay Corder letter until such time as plaintiff seeks to introduce it into evidence at trial.

The Court notes at this time that the circumstances under which defendants produced the Clay Corder letter, however, weigh strongly against excluding it. On behalf of Hunt Health, defendants answered that they did not know the meaning of the codes but that their agent, KMBS, did know. Defendants' counsel then assured plaintiff's counsel, at the 30(b)(6) deposition, that he would obtain the requested information from KMBS. Defendants now move to exclude the very information that they promised to deliver, a promise defendants issued when Hunt Health's chosen representatives lacked the knowledge to speak on Hunt Health's behalf. Defendants do not justify their failure to produce a knowledgeable witness at the deposition. Worse, defendants do not justify their turnabout from February 1998, when they assured plaintiff that they would "make a diligent effort to find out what those codes are," Hunt Health Dep., at 39, to the present, when they move to exclude the long-awaited fruits of that "diligent effort."

## V. Defendants' Motion In Limine To Preclude Plaintiff's Evidence Concerning Hunt Health's Settlement Offer

Defendants assert that "Plaintiff's pretrial order contentions and his proposed trial exhibit list belie that ... he will seek to introduce at trial evidence of attempts by Hunt Health during the period January to March of 1993 to settle or compromise any dispute it may have had with Towers as of that time." Defendants' Motion In Limine To Preclude Plaintiff's Evidence Concerning Hunt Health's Settlement Offer, at 1 ("Defendants' Motion"). Defendants do not specify any evidence that they seek to preclude. Therefore, as no certain forecasted evidence presents itself here for a ruling *in limine*, defendants' motion is denied. *Compare Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*,

---

16. Defendants' lone citation follows their alternative position that plaintiff failed to "describe with reasonable particularity the matters on which" the deposition of Hunt Health is requested. The Court rejects this argument both because plaintiff gave adequate notice in its Notice of Deposition, *see* Plaintiff's Opposition, Exh. B, and because defendants' counsel made assurances at the deposition that defendants would obtain the sought after information.

Defendants conclude that plaintiff "failed properly to procure 30(b)(6) testimony on the matter," Defendants' Motion, at 4–5, but do not explain how their assurances at Hunt Health's deposition bear on the letter's admission.

No. 94 Civ. 5520, 1998 WL 665138, at * 3 (S.D.N.Y. Sept. 25, 1998).

██ Although defendants' motion lacks the specificity to warrant a favorable ruling *in limine,* the Court reserves judgment on whether any settlement offers will be admitted should plaintiff seek to do so at trial. Evidence of "attempting to compromise a claim which was disputed as to either validity or amount" is generally not admissible. Fed.R.Evid. 408; *see Alpex Computer Corp. v. Nintendo Co.,* 770 F.Supp. 161 (S.D.N.Y.1991). "Both the timing of the offer and the existence of a disputed claim are relevant to the determination." *Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 827 (2d Cir.1992); *see Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506 (2d Cir.1989). This Court will prevent plaintiff from admitting at trial evidence clearly within the ambit of Rule 408.

## VI. *Defendants' Motion In Limine To Preclude Plaintiff from Proffering Documents Taken by Stewart Davis & Co.*

Defendants ask the Court to preclude plaintiff from proffering Exhibits 82–179. These exhibits include documents that apparently were drawn from Hunt Health's mail and sent to Towers by an employee of Stewart Davis & Co., prior to this litigation or the predicate for this litigation, pursuant to the agreement between the parties.[17] Defendants offer no grounds for precluding admittance of the documents at issue. The motion is therefore denied.

## VII. *Defendants' Motion In Limine To Preclude Plaintiff's Evidence Concerning Towers' Collection Obligation and Parties' Alleged Collection "Agreement"*

Defendants seek to preclude plaintiff from offering at trial any evidence that: (a) Towers was not obligated to collect accounts receivable sold by Hunt Health to Towers pursuant to the HCP Agreement, (b) defendants were contractually obligated to collect accounts receivable sold by Hunt Health to Towers, (c) the letter of Dan Perry dated September 24, 1992 constituted an agreement between the parties, and (d) that Towers' obligation to collect the accounts receivable of Hunt Health pursuant to the terms of the HCP Agreement was extinguished by agreement between the parties at any point during the course of their relationship.

Defendants' Motion In Limine To Preclude Plaintiff's Evidence Concerning Towers' Collection Obligation and Parties' Alleged Collection "Agreement," at 1 ("Defendants' Motion"). Defendants assert that precluding plaintiff from proffering evidence on these four points necessarily follows from this Court's first summary judgment decision. *Wechsler,* 1999 WL 397751, at *10. Defendants' motion is partially granted.

In its June 1999 summary judgment decision, this Court held that plaintiff is judicially estopped from asserting that "Towers had no collection obligation under the HCP Contract." *Id.* The Court reached this holding because in the *New Medico* litigation plaintiff argued that the form HCP Contract required Towers to collect

---

**17.** The Court notes that defendants' motion in limine fails to specify the documents that it seeks to preclude. In its opposition, plaintiff notes this failure. Defendants, in their reply, state that "the documents to which defendants object are identifiable." Defendants' Motion In Limine To Preclude Plaintiff from Proffering Documents Taken by Stewart Davis & Co., at 1. This Court queries, then, why defendants did not identify the documents in their motion, but instead waited until their reply papers to do so, after plaintiff's opportunity to oppose the motion had passed.

on accounts receivable. *Id.* Thus this Court prevented plaintiff from taking an inconsistent position in this case. Subpart "(a)" of defendants' motion is therefore granted. Plaintiff is precluded from offering evidence to support an argument that Towers had no collection duty under the HCP Agreement.

The Court reserves judgment, however, on whether plaintiff may introduce evidence to assert that Hunt Health did, in fact, undertake the collection of accounts receivable, regardless of Towers or Hunt Health's obligations. The Court also reserves judgment on whether plaintiff may introduce evidence to argue that Towers and Hunt Health agreed to change their respective collection obligations in the Fall of 1992. Neither of these positions contradicts plaintiff's position in the *New Medico* case, thus neither falls within the reach of this Court's June 1999 judicial estoppel ruling. In other words, while plaintiff may not argue that Towers incurred no collection obligations under the HCP Agreement, it does not follow that plaintiff may not argue that either Hunt Health actually undertook to collect accounts receivable, or that the parties modified the HCP Agreement. The Court thus reserves judgment on subparts "(b)," "(c),"[18] and "(d)" of de-

fendants motion, until the motion is placed in the proper factual context.

## VIII. *Defendants' Motion In Limine To Bar Plaintiff from Proffering Non–Party Account Receivable Reports and Explanation of Benefit Forms*

Defendants seek to preclude plaintiff from admitting accounts receivable reports prepared by Kerr Medical Billing Services ("KMBS") and Explanation of Benefit Forms ("EOBs") prepared by various insurers. Defendants claim that these documents are unauthenticated and include hearsay. Plaintiff responds that Clay Corder authenticated the accounts receivable reports at his deposition, and that the accounts receivable reports are admissible under the business records exception to the rule against hearsay. *See* Fed.R.Evid. 803(6). Plaintiff also responds that the EOBs are authenticated because defendants produced them,[19] and that the EOBs will not be offered for their truth.

 "Evidence sufficient to support a finding that the matter in question is what its proponent claims" satisfies Rule 901's requirement of authentication. Fed. R.Evid. 901(a). "Rule 901 does not erect a particularly high hurdle." *United States v. Dhinsa,* 243 F.3d 635, 658 (2d Cir.2001)

---

**18.** As defendants seek to preclude plaintiff *from offering evidence that "(c) the letter of* Dan Perry dated September 24, 1992 constituted an agreement between the parties,'' Defendants' Motion, at 1, and plaintiff "concedes this letter does not constitute a binding agreement between the parties,'' Plaintiff's Opposition, at 4, this Court technically grants defendants' motion with respect to subpart "(c)." Plaintiff contends, however, that the letter "evidences the actual conduct of the parties subsequent to September 24, 1992," *id.,* and intends to "use this letter and other evidence . . . to show that Hunt Health did, in fact undertake the collection of its own accounts receivables [*sic*] subsequent to September 24, 1992." *Id.* at 5. Plaintiff is not

judicially estopped from asserting this argument, and this Court reserves judgment on whether some other grounds support precluding this argument or evidence supporting it.

**19.** Plaintiff directs this Court to its opposition to Defendants' Motion In Limine to Bar Plaintiff from Proffering Non–Bates–Stamped Documents for its argument that the EOBs have been authenticated. In that brief, plaintiff only referred to trial Exhibits 489 and 490. Here, defendants appear to challenge Exhibits 88–182, and 487–490. Plaintiff has not made clear whether his argument applies with equal force to the additional challenged documents.

(internal quotations omitted). "Testimony that a matter is what it is claimed to be" sufficiently authenticates a document. Fed.R.Evid. 901(b)(1). Production of documents by an adversary also factors into a Court's decision on the authenticity of a document. *See John Paul Mitchell Sys. v. Quality King Distribs. Inc.,* 106 F.Supp.2d 462, 472 (S.D.N.Y.2000). Moreover, a document's appearance and content may demonstrate its authenticity. *Id.*

 Unless an exception applies, a statement made out of court subsequently offered for its truth is hearsay, and is inadmissible. Fed.R.Evid. 801, 802. A statement not offered for its truth is not hearsay, and is admissible if relevant and reliable. Fed.R.Evid. 801(c). Records "kept in the course of a regularly conducted business activity" are not excluded by the hearsay rule. Fed.R.Evid. 803(6). Business records generally must meet three criteria for admission: (1) the document was kept in the course of a regularly conducted business activity; (2) it was the regular practice of that business activity to make the record; and (3) either a custodian of the document testifies to (1) and (2) or the document is properly certified. *United States v. Freidin,* 849 F.2d 716, 719–20 (2d Cir.1988). "Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all." *Phoenix Assocs. III v. Stone,* 60 F.3d 95, 101 (2d Cir.1995).

Here, the Court is ill-equipped to make a determination regarding the authenticity of either the accounts receivable reports prepared by KMBS, or the EOBs, because the parties have not submitted copies of the documents to the Court. The Court is also ill-equipped to make a determination regarding whether the hearsay rule bars plaintiff from admitting the accounts receivable reports and the EOBs into evidence. The parties have merely made conclusory statements about whether the accounts receivable reports qualify as business records without addressing the criteria for the business records exception. Ruling on the EOBs likewise is premature at this point. As plaintiff has not yet sought to admit them into evidence, the Court will not speculate at this time whether he would attempt do so for their truth.

Defendants' motion to preclude plaintiff from proffering such evidence is therefore denied. The Court reserves judgment on whether plaintiff can admit the accounts receivable reports or the EOBs until such time as plaintiff seeks to offer these documents into evidence.

IX. *Defendants' Motion In Limine To Bar Plaintiff from Proffering Evidence that Towers Loaned Money to Hunt Health*

 Defendants move to preclude plaintiff from suggesting, "in form or substance," that Towers loaned money to Hunt Health. Defendants make two arguments to support their motion. First, this Court has characterized the relationship between the Towers and Hunt Health as that of a purchaser and seller, *see Wechsler,* 1999 WL 397751, at *1 ("This transaction involves the purchase and sale of accounts receivable, a transaction frequently referred to in business parlance as 'factoring.'"), thus plaintiff may not suggest now that it is an obligor/lender relationship. Second, defendants argue that plaintiff's answers to interrogatories contradict any assertion that Towers loaned Hunt Health money, and these answers bind plaintiff and have preclusive effect. Plaintiff responds that he does not intend to offer evidence to suggest, in form or substance, that Towers loaned money to Hunt Health. Plaintiff intends, rather, to introduce evidence related to whether and how Hunt

Health became indebted to "Towers for the advances Towers had made on accounts receivable ... when the accounts failed to comply with Paragraph 8 [of the HCP Agreement]." *Wechsler*, 198 F.Supp.2d at 522.

Defendants' motion appears premised primarily on semantic, rather than substantive, distinctions. The parties do not dispute whether plaintiff may assert at trial that Towers loaned money to Hunt Health. Clarifying this common ground between the parties does little to address defendants' motion, however, because defendants essentially seek to prevent plaintiff from making any suggestion that Hunt Health was indebted to Towers under the terms of the HCP Agreement, or from otherwise implying that a creditor/debtor relationship existed between Towers and Hunt Health.

This Court finds no merit to defendants' position. First, the "finding" to which defendants refer in the 1999 summary judgment decision merely describes the nature of the action between the parties. *See Wechsler*, 1999 WL 397751, at *1. By describing the action as involving "the purchase and sale of accounts receivable" the Court did not preclude plaintiff from arguing that Hunt Health became indebted to Towers when it forwarded accounts that did not comply with Paragraph 8 of the HCP Agreement. This Court found on summary judgment, in fact, that Hunt Health became indebted to Towers in precisely that situation. *See Wechsler*, 198 F.Supp.2d at 522. Moreover, defendants' citation to plaintiff's answers to interrogatories on behalf of Towers does not support its motion. An ordinary reading of the interrogatories and answers compels a conclusion distinct from that reached by defendants' apparent reading:

No. 13 Describe each occasion in which Towers loaned any sum of money to Hunt Health.

. . . .

[Answer:] Towers did not loan money to Hunt Health, although, as set forth in the HCP Agreement, indebtedness by Hunt Health to Towers could arise by operation of the HCP Agreement.

Defendants' Motion In Limine To Bar Plaintiff from Proffering Evidence that Towers Loaned Money to Hunt Health, at 3 (citing Administrative Trustee's Response to Defendants' Written Questions (Feb. 12, 1998)). While defendants correctly note that these answers to interrogatories have preclusive effect, *see Wechsler*, 1999 WL 672902, at *2–3, an argument that Hunt Health became indebted to Towers at any point would not contradict plaintiff's answers to interrogatories.

Therefore, as defendants purport to "bar plaintiff from proffering evidence that Towers loaned money to Hunt Health," their motion *in limine* is granted. In so far as defendants' attempt to preclude plaintiff from suggesting, "in form or substance," that Hunt Health became indebted to Towers under certain circumstances, this Court rejects that attempt.

X. *Defendants' Motion To Strike the Supplemental Report of Andrew Prague*

Plaintiff submitted the original report of his expert, Andrew Prague, on November 15, 2002. Defendants challenged the adequacy of the report, and postponed deposing Prague until this Court addressed their challenges. In a February 25, 2003 opinion and order, this Court admonished defendants for failing to conduct discovery of plaintiff's expert once they received Prague's expert report. *Wechsler*, 2003 WL 470330, at *6. This Court also remind-

ed plaintiff of his duty to supplement the expert report under Rule 26(e) of the Federal Rules of Civil Procedure should the need arise. *Id.* at *7 n. 5. Defendants deposed Prague on April 9, 2003. Plaintiff thereafter submitted the Supplemental Expert Report of Andrew Peter Prague on May 7, 2003. Defendants now move to strike the supplemental report. For the reasons set for the below, defendants' motion is granted in part and denied in part.

Although defendants do not precisely articulate the legal basis for their motion to strike, presumably defendants argue as follows. First, Prague's expert report exceeds the bounds of Rule 26(e). Defendants contend that the supplemental report does not supplement the original report, but that it rather completely replaces the original report.[20] Second, by submitting an essentially new report on May 7, 2003, plaintiff has failed to comply with Rule 26(a)(2), thereby causing prejudice to defendants. Expert discovery had been closed by May 7, and the long-awaited trial of this action approaches. Defendants urge that the new substance of the report, combined with the timing of its submission, indicate plaintiff's bad faith. Defendants ask this Court to strike the supplemental report in its entirety, or to reopen expert discovery.

Plaintiff responds that Rule 26(e) contemplates the very sort of supplementation to which defendants now object. The supplemental report, plaintiff argues, "supplements Mr. Prague's explanation of the methodologies he employed, and corrects omissions from the Original Report." Plaintiff's Opposition to Defendants' Motion To Strike the Supplemental Report of Andrew Prague, at 3 ("Plaintiff's Opposition").

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires an expert to submit an expert report that contains all of the expert's opinions, the data considered by the expert, any exhibits to be used to summarize or support the opinions, the expert's qualifications, the expert's compensation for the testimony, and a listing of the expert's involvement in related cases. *See Montefiore Medical Center v. American Protection Insurance Co.*, 226 F.Supp.2d 470, 473 (S.D.N.Y. 2002). As this Court noted in its February 2003 opinion addressing defendants' letter requests concerning perceived inadequacies in expert report of Andrew Peter Prague, Rule 26(e) of the Federal Rules of Civil Procedure requires a party to "supplement or correct [an expert report] to include information thereafter acquired if ordered by the court or ... if the party learns that in some material respect the information disclosed is incomplete or incorrect." Fed.R.Civ.P. 26(e); *Wechsler*, 2003 WL 470330, at *7 n. 5; *see Bard v. Board of Education of New York*, 99 Civ. 0149, 2002 WL 188471, at *5 (S.D.N.Y. Feb. 6, 2002). Exclusion of expert testimony is a "drastic remedy." *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y.1995); *see Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 94 Civ. 5587, 2002 WL 31780188, at *3–4 (S.D.N.Y. Dec. 11, 2002) (Leisure, J.). Precluding testimony of an expert, even when there has not been strict compliance with Rule 26, "may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants." *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 277 (S.D.N.Y.1998). When determining whether to exclude expert testimony, a court should consider: "(1) the prejudice

---

**20.** The Supplemental Expert Report of Andrew Peter Prague is Prague's entire expert report. It combines the original report with Prague's alterations in one self-contained document, as would a revision of a draft.

or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, ... and (4) bad faith or willfulness in failing to comply with the district court's [scheduling] order." *Id.; Rmed Int'l,* 2002 WL 31780188, at *3.

Here, portions of the Supplemental Expert Report of Andrew Peter Prague exceed the boundaries set out in Rule 26(e), and prejudice defendants. Contrary to plaintiff's assertions that "Mr. Prague's conclusions remain unchanged" and that the supplemental report merely clarifies Prague's methodologies, portions of the supplemental report alter a formerly complete analysis, and not on the basis of any information acquired after Prague submitted his original report. The Court considers each of Prague's alterations in turn.

### A. *Solvency*

■ Prague inexplicably alters his insolvency analysis in the supplemental report. Whereas in the original report Prague analyzes Hunt Health's solvency before and after the April 2, 1993 Asset Purchase Agreement Hunt Health entered with Esperanza, in the supplemental report Prague purports to analyze only whether Hunt Health was rendered insolvent by the transaction with Esperanza.[21]

Plaintiff does not contest defendants' argument that the new direction taken by Prague to analyze Hunt Health's insolvency represents an improper change. Plaintiff makes no effort to explain how Prague's directive shifted between the time he issued his original and supplemental reports. Moreover, the shift in Prague's solvency analysis prejudices defendants. Plaintiff submitted the supplemental expert report after the close of expert discovery, with trial approaching. *See Wechsler,* 2003 WL 470330, at *7 (setting out schedule for final expert discovery); Fed.R.Civ.P. 26(a)(2)(B) ("These disclosures shall be made at the times and in the sequence directed by the court."). The Court therefore strikes all of the alterations made to Section III.A of Prague's original report reflected in Prague's supplemental report.[22]

### B. *Sampling*

■ Prague offers a new justification for using a random sample of Explanation of Benefit forms in his supplemental report. *See* Prague Supplemental Report, at 12; Prague Dep., at 157. Prague's new explanations do not arise from any after acquired information, and do not complete any otherwise incomplete explanation of the basis for Prague's methodology.

---

**21.** Prague states in his original report that "I have been asked to give an opinion as to whether Hunt Health was insolvent *just prior to* the transfer of substantially all of its assets to Esperanza pursuant to the April 2, *1993* Asset Purchase Agreement, and/or as a result of the transaction." Prague (Original) Report, at 3–4 (emphasis added). Prague states in his supplemental report that "I have been asked to give an opinion as to whether Hunt Health was insolvent *as a result of* the transfer of *substantially* all of its assets to Esperanza....." Prague Supplemental Report, at 4 (emphasis added). Prague also shifts from "Hunt Health was *both* insolvent at the time of the transaction and was rendered further insolvent as a result of the transaction"

Prague (Original) Report, at 8 (emphasis added), to "Hunt Health was *rendered insolvent* as a result of the transaction." Prague's Supplemental Report, at 9 (emphasis added).

**22.** This Court does not strike the addition of references to Texas law, as such additions *supplement* the report on the basis of after acquired information. *See* Plaintiff's Opposition, p. 8 n. 3. The Court does, however, strike all other alterations made to the original report's Section III.A. on insolvency, including, but not limited to, those referenced in footnote 19 above, and the added paragraph on page *nine* of the supplemental report.

Prague simply offers a new explanation for using a random sample of Explanation of Benefit forms that contradicts his prior explanation. This Court strikes from Prague's supplemental report the new explanations for using a random sample. *See* Prague Supplemental Report, at 12.

Prague also adds a new alternative analysis of the Explanation of Benefit forms. Prague Supplemental Report, at 11–13 (Section III.B.3). Plaintiff argues that "Mr. Prague does not offer a new sampling methodology," but soon thereafter states that "[t]his analysis is simply a more conservative methodology that bolsters the conclusions that Mr. Prague gave in the Original Report." Plaintiff's Opposition, at 12. The duty placed upon a proponent to supplement expert disclosure does not support Prague's endeavor here to bolster his original expert report. Prague's new analysis is based on no new information, and appears simply an effort to include in Prague's report an alternative review of the same accounts receivable documents after the deadline to depose Prague has passed. Admitting Section III.B.3 of the supplemental report would prejudice defendants. This Court therefore strikes Section III.B.3 of the supplemental report.[23]

### C. New Documents

■ Prague adds Explanation of Benefits forms for 1992 and 1993 to his list of documents reviewed in formulating an opinion. Prague's Supplemental Report, at 3. These are not new documents and defendants were on notice before receiving the supplemental report that Prague relied on such documents. *See* Prague Dep., at 71. Prague merely corrected an omission

in his original report by adding them in his supplemental report, precisely as Rule 26(e) requires. This Court does not strike item "(9)" from Section II of Prague's supplemental report.

### D. Paid Claims

■ Prague adds "paid" accounts to his list of accounts that would not qualify as reimbursable under the HCP Agreement, and thus that he would not classify as reimbursable in his report. The Court agrees with plaintiff that adding "paid" accounts does not change Prague's analysis or conclusions, but merely corrects an oversight in the original report. Both parties have been aware that "indebtedness to Towers is comprised of advances on accounts which were either denied, disputed, or *paid* to Hunt Health without Hunt Health forwarding the proceeds to Towers." *Wechsler,* 198 F.Supp.2d at 518 (emphasis added). This Court does not strike any reference to "paid" accounts in the supplemental report.

### Conclusion

For the reasons set forth above, the Court rules on defendants' remaining *in limine* motions and motion to strike as follows:

1. Defendants' Motion to Preclude the Testimony of Plaintiff's Expert Witness Andrew Prague, Defendants' Motion In Limine that the Trier of Fact Draw a Negative Inference Against Plaintiff as a Result of Plaintiff's Failure to Produce Towers' Records, and Defendants' Motion In Limine To Preclude Plaintiff from Proffering Documents Taken by Stewart Davis & Co. are denied.

---

**23.** Section III.B.3 relates a third analysis of Hunt Health's accounts receivable, and uses a 238–day timetable for measuring what accounts during 1993 were denied, disputed, or

paid. This section, and all parts of the report related to this new analysis, *see, e.g.,* Prague Supplemental Report, Attachment A, are to be struck from Prague's report.

2. Defendants' Motion in Limine To Bar Plaintiff from Proffering Letter Related to Account Codes Purportedly Utilized by Kerrville Medical Billing Services is denied. The Court reserves judgment on the admissibility of the Clay Corder letter until such time as plaintiff seeks to introduce it into evidence at trial.

3. Defendants' Motion In Limine To Preclude Plaintiff's Evidence Concerning Hunt Health's Settlement Offer is denied. The Court reserves judgment on whether any settlement offers will be admitted should plaintiff seek to do so at trial.

4. Defendants' Motion In Limine To Preclude Plaintiff's Evidence Concerning Towers' Collection Obligation and Parties' Alleged Collection "Agreement" is partially granted. The Court reserves judgment on whether plaintiff may introduce evidence to assert that Hunt Health did, in fact, undertake the collection of accounts receivable, regardless of Towers or Hunt Health's obligations. The Court also reserves judgment on whether plaintiff may introduce evidence to argue that Towers and Hunt Health agreed to change their respective collection obligations in the Fall of 1992.

5. Defendants' Motion In Limine To Bar Plaintiff from Proffering Non–Party Account Receivable Reports and Explanation of Benefit Forms is denied. The Court reserves judgment on whether plaintiff can admit the accounts receivable reports or the EOBs until such time as plaintiff seeks to offer these documents into evidence.

6. Defendants' Motion In Limine To Bar Plaintiff from Proffering Evidence that Towers Loaned Money to Hunt Health is granted in part and denied in part.

7. Defendants' Motion To Strike the Supplemental Report of Andrew Prague is granted in part and denied in part. The Court orders plaintiff to submit to defendants and the Court a Final Report of Andrew Peter Prague that reflects this order.

SO ORDERED.